### RICE v. RICE et al.[1]

*(Circuit Court, D. Delaware. December 12, 1888.)*

**1. VENDOR AND VENDEE—VENDOR'S LIEN.**

The English doctrine of the vendor's equitable lien for unpaid purchase money, upon an absolute conveyance of land, has not been generally adopted in the United States, and this court will not enforce the lien in a state where it has not been established by statute, or is not recognized as in force by the state tribunals. A secret lien is a dangerous one and not entitled to favor, especially in a state where every facility is afforded for the recording and preservation of liens, or of giving notice to the world of their existence.

**2. SAME—WAIVER OF LIEN.**

A vendor of land took from his vendee a note indorsed by a third party for an unpaid portion of the purchase money. The vendee mortgaged the land, which was afterwards sold at sheriff's sale under one of the mortgages to the mortgagee. At the time of the mortgage and sale the land was treated by all the parties, who were living in intimate relations, as unincumbered, and it was testified that the joint note was taken to secure the sum still owing, and that the vendor had given no notice to the mortgagee, until after the mortgage, of any claim against the land. *Held*, that the vendor had taken the security of a third person, and waived his lien on the land for the amount unpaid.

In Equity.

Bill by James H. Rice against John V. Rice and Josiah Morris, to enforce a vendor's lien on lands owned by defendant Morris.

*George H. Bates* and *Edward G. Bradford*, for complainant.

*Wm. C. Spruance* and *Anthony Higgins*, for defendant.

WALES, J. This suit is brought to establish and enforce a vendor's lien on certain lands, with an iron foundry erected thereon, in the city of Wilmington, now owned by the defendant Morris. James H. Rice, the complainant, and John V Rice, one of the defendants, on the 10th of September, 1864, were copartners in the business of iron founders at the foundry aforesaid, and seized in fee of said lands; and on that day James H. Rice and John V. Rice, by an agreement and indenture in writing under their hands and seals, dissolved their partnership, and James sold to John the undivided part and share of James "in the joint trade and of all the property, goods, wares, merchandise, money, debts, and effects thereto belonging, or in anywise appertaining, or in which the said James H. Rice has any right, title, or interest by virtue of said copartnership, and all the right, title, and use of James H. Rice of, in, and to the said capital, joint stock, property, effects, money, and debts, and any and every part thereof, and all the profits, gains, and proceeds thereof."

---

[1]Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

By the agreement James appointed John his attorney to wind up the business, and covenanted not to interfere with John therein; and in consideration thereof John covenanted to pay James $600 in each year for 10 years from said date, if James should so long live, in semi-annual payments of $300 each; and $5,000 at the end of the said 10 years if James were then living, but, if he were then dead, to pay to the personal representatives of James the $5,000, less the sum of $300 for each year after the date of said agreement until the death of James. In conclusion, John covenanted to pay all the partnership debts, and to indemnify James from all liability on account of them. On the same day, September 10, 1864, John gave to James the joint note of himself and Theodore Hyatt, of which the following is a copy:

"WEST CHESTER, September 10th, 1864.

"Ten years after date we promise to pay to James H. Rice five thousand dollars, without defalcation, for value received, sul ject, however, to the conditions expressed in the article of agreement between James H. Rice and John V. Rice, bearing this date.

"$5,000.00.　　　　　　　　　　[Signed]　　　J. V. RICE,
　　　　　　　　　　　　　　　　　　　　　　　"THEO. HYATT."

Seven months afterwards, on the 10th of April, 1865, James conveyed the said real estate to John, by a deed of bargain and sale, for the consideration of $5,000, the receipt of which sum is duly acknowledged. The complainant says that this deed was prepared for execution at the time of making the agreement of dissolution of partnership, and as part of that transaction, but was not in fact executed until the day of its date. Within less than two years and a half after the execution and delivery of this deed, the defendant John V. Rice borrowed from the defendant Morris several sums of money, to secure the payment of which he gave to Morris three several mortgages on the foundry property, as follows: one dated February 6, 1866, for $12,000; one dated September 22, 1866, for $3,000; and a third, dated September 2, 1867, for $10,000, all of which mortgages were duly recorded. On this last mortgage Morris recovered a judgment, on a writ of *scire facias*, in the superior court of Delaware, for New Castle county, at the November term, 1875, against John V. Rice and wife, and under a writ of *levari facias* to the May term, 1876, on said judgment, the sheriff sold the property described in the mortgage to the defendant Morris, for $3,100, subject to the first two mortgages. The sale was confirmed by the court, and the sheriff, by deed, dated June 6, 1876, conveyed the property to Morris, who still owns it. The complainant alleges that Morris accepted the three mortgages, and afterwards became the purchaser of the real estate, with full knowledge and notice that the consideration money, and its interest, for which the complainant had conveyed the property to John V. Rice, had never been paid, and therefore took and holds the property subject to an equitable lien in favor of the complainant for the unpaid purchase money and interest; that John V. Rice is insolvent, and the complainant without remedy, except by enforcing said lien. The bill does not allege that the vendor's lien was expressly reserved, but claims that it exists

by the operation of law, from the fact that John V. Rice, the vendee,. did not pay the consideration money, and that Morris knew this fact when he loaned the money, and also when he bought the property. Morris denies that he took the mortgages, or purchased the property, with any knowledge or notice that the complainant had not been paid the $5,000. He also denies that any such lien can exist, because (1) the complainant took for the purchase money the promissory note of John V. Rice, with Theodore Hyatt as surety, and accepted the same in lieu of all liens or claims against the property, (2) that the said note has since been paid and satisfied by Hyatt; (3) that when Morris took the mortgages from John V. Rice, the latter assured him that the property was free and clear from all liens and incumbrances, and this was verified by searches made by Morris' counsel; (4) that the right of a vendor of real estate to an equitable lien thereon for the unpaid purchase money, · has never been recognized or adopted by the courts of Delaware, and no· such right exists under the laws of that state.

The English doctrine of the vendor's equitable lien for unpaid purchase money, upon an absolute conveyance of land, is adopted in some of the states, rejected in some, and remains undecided or doubtful in others. It is conceded that unless this doctrine is in force in Delaware this court cannot recognize and apply it in the present case. It is also admitted on the part of the complainant that, so far as judicial decisions have gone in Delaware, the question is an open one. In *Budd* v. *Busti*, 1 Har. (Del.) 69, the question of the existence of the lien was directly made to the court of appeals, and appears to have been the only one argued by the able and learned counsel who took part in the discussion. The whole law relating to the subject was brought under review, and, after a full consideration, a majority of the court were disinclined to accept the doctrine as a part of the law of Delaware. The court below had decidedly refused to recognize it. This was in 1833, and, so far as we are informed, no application to enforce this lien has been made to the court of chancery of Delaware from that day to this. In *Godwin* v. *Collins*, 3 Del. Ch. 199, to a bill for the specific performance of a contract for the sale of land, the defense was made that the payment of the purchase money was not in any manner secured to the vendor, to which it was replied that he was made secure by the vendor's lien. In referring to this, Chancellor BATES said:

"This, if true, would afford only a precarious security, since the vendor's lien does not follow land into the hands of a purchaser for value without notice. But whether what is known in England as the 'vendor's lien,' is recognized here, remains in doubt since the case of *Budd* v. *Busti*, in the court of errors and appeals. In that case, though the decision went upon other grounds, a majority of the judges expressed opinions decidedly adverse to the recognition in this state of a vendor's lien for purchase money. The policy of our law is against liens not of record, and the necessity for the vendor's lien is practically superseded by the long-settled and uniform habit of our people to take special securities for unpaid purchase money."

On appeal the decree in *Godwin* v. *Collins* was affirmed. 4 Houst. 28. This last case came down to the year 1869. It has been generally understood that the supreme court of the United States will not consider the

lien as existing in any state unless it has been previously adopted by the law, or is recognized by the courts of the state in which the land sought to be charged is situated. *Ahrend* v. *Odiorne*, 118 Mass. 267; *Brown* v. *Gilman*, 4 Wheat. 290; *Bayley* v. *Greenleaf*, 7 Wheat. 46; *McLearn* v. *Mc-Lellan*, 10 Pet. 640; *Chilton* v. *Braiden*, 2 Black, 458; *Cordova* v. *Hood*, 17 Wall. 1. It may be reasonably assumed that the court, in adopting this course, was governed by the consideration that it had no power to create or impose a lien growing out of the mere relation of vendor and vendee of real property, which had not already been recognized or established by the law of the state. In all matters relating to the execution and construction of deeds, wills and contracts for the sale and disposition of real property, the courts of the United States, in entertaining jurisdiction of controversies arising from any of these causes, will be guided and controlled by local laws and adjudications. Thus, in *Daniel* v. *Whartenby*, 17 Wall. 641, which was on a writ of error to the circuit court of the United States for the district of Delaware, in an action of ejectment, the contention of the defendants below being that, in the construction of a will under which both parties claimed title, the rule in *Shelley's Case* applied, the court expressly took notice of the fact that that rule was in force in Delaware, although it had been abolished in most of the states of our Union. So in *Cordova* v. *Hood, supra,* the court held that the vendor's lien was a part of the law of Texas, and decided accordingly. In view of what was said, as well as of what was left unsaid, in *Budd* v. *Bush,* and of the pregnant remarks of Chancellor BATES, above quoted, the question of vendor's lien in Delaware can hardly be said to be an open one. If such a lien was ever known to be in force there, of which there is much doubt, it has lain dormant, or become obsolete; and for the reasons already suggested we do not think that this court would be justified at this late day in reviving and applying it. A secret lien is a dangerous one, and is not entitled to favor, especially in a state where every facility is afforded for the recording and preservation of incumbrances, and of giving notice to the world of their existence. The enforcement of such a lien is fraught with danger to the innocent purchaser, since it may put it into the hands of a fraudulent vendor to fasten it on land which has been bought and paid for in good faith, when, after the lapse of time and the loss of evidence, the purchaser may be unable to prove the real history of the transaction. In the case at bar it is somewhat remarkable that, at the distance of nearly a quarter of a century from the date of the articles of agreement between the complainant and John V. Rice, all the material witnesses, with one exception, survived to testify concerning the actual terms on which the property was conveyed to John V. Rice, and the intention of both vendor and vendee at the time of the execution of the deed. Their testimony on the main issue is conflicting, but after a careful examination of the evidence we have had no difficulty in coming to a satisfactory conclusion on the facts.

Even admitting the law of England, respecting the lien of vendors for the purchase money after the execution of a deed, to be the law of Delaware,—a point we do not mean to decide,—we think it perfectly clear, on

the evidence, as did the court in *Brown* v. *Gilman, supra,* that no lien was retained, and none was intended to be retained, by the complainant in this case. We are also of the opinion that the lien did not attach by implication by operation of law, and that, if it could be said ever to have attached, it was waived by the act of the complainant in taking the security of a third person for the payment of the purchase money. The relationship of and between the parties to this suit,—that of brothers and brothers-in-law,—the qualified admissions of John V. Rice that he may have told Morris at the time the mortgages were given that the land was free and unincumbered, and the testimony of Hyatt and Carter that the joint note was taken by the complainant as security for the consideration named in the deed, so that John V. Rice would be better able to borrow money outside on mortgage, and the settlement of the action brought on the note, convince us that, under the broadest application of the law of vendor's lien, the proofs do not sustain the allegations of the bill. The complainant says that he mentioned his claim for the unpaid purchase money to Morris somewhere between 1873 and 1875,—long after Morris had loaned his money and taken the mortgages; while Morris denies that he ever had any notice, or knowledge of the claim, until shortly before the bringing of this suit. Morris was in California before and at the time when the Rice brothers dissolved their partnership, and did not return until after the negotiations for the sale of the foundry had been completed. All the parties, including the witnesses Hyatt and Carter, lived together under the same roof, at West Chester, for several months subsequent to the sale; and during many years thereafter John V. Rice and his family were supported by Morris, at whose house, in Salem, N. J., the complainant was also a frequent guest. The dissolution of the partnership, the transfer of the property and business of the firm to John V. Rice, and the conditions on which these changes were made, were more or less discussed in the family councils, and the witnesses are thus able to speak of them with some degree of certainty. John V. Rice is only a nominal defendant, and does not appear to advantage as a witness, while the complainant's testimony is overweighed by that of Hyatt, Carter and Morris. The complainant received some interest on the note from John V. Rice; and Hyatt swears that, when the action on the note was begun, he had, in various ways, paid to the complainant as much as $4,500; and the proof is uncontradicted that that action, as far as Hyatt was concerned, was settled by his paying to the complainant the sum of $500. Mr. Morris appears to have been a generous benefactor to the Rice brothers, and, if there was any deception practiced on the complainant, in the sale and transfer of the foundry property, it was caused by the complainant's own fault in neglecting to take a mortgage for the purchase money, and trusting to the security afforded by the note of his brother and Hyatt. A decree will be entered dismissing the bill with costs.