FRATER, Receiver, v. OLD NAT. BANK OF PROVIDENCE, R. I., et al.

(Circuit Court of Appeals, First Circuit. April 21, 1900.)

No. 324.

NATIONAL BANKS—ASSESSMENTS AGAINST STOCKHOLDERS—LIABILITY OF PLEDGEE.

It is only in clear cases that a pledgee. on the ground of estoppel, can be subjected to liability for an assessment on national bank stock, instead of the owner, upon whom the legal obligation rests; and, where stock stood upon the books of a bank in the name of a person as cashier of another national bank, the designation suggested a qualified or representative holding, which put all persons on inquiry, and the bank of which the holder was cashier is not estopped to show that it held the stock as collateral only,—at least, in the absence of evidence that the insolvent bank or its creditors in fact acted in reliance on its supposed ownership.

Appeal from the Circuit Court of the United States for the District of Rhode Island.

Algernon S. Norton and C. Frank Parkhurst (Henry W. Bookstaver, on the brief), for appellant.

Herbert Almy, for appellees Old Nat. Bank of Providence, R. I., and Francis A. Cranston.

Abram Barker, for appellee Frank L. Hinckley.

Before PUTNAM, Circuit Judge, and WEBB and ALDRICH, District Judges.

ALDRICH, District Judge. It seems quite unnecessary to add anything to the clear and conclusive reasoning of Judge Brown, in the court below, with respect to the questions presented by this record. See (C. C.) 86 Fed. 1006.

Certain shares of the Merchants' National Bank of Seattle were held by the Old National Bank of Providence, R. I., as collateral security to indebtedness of one Barker. The shares stood upon the records in the name of "F. A. Cranston, cashier Old National Bank, Providence, R. I."; but they were in fact owned by Barker, and in fact were pledged as collateral security to indebtedness from Barker to the bank.

The primary purpose of the statutory assessment law was to secure members of the public dealing with corporations, by creating an assessment liability upon the owner of the stock. That is where the primary burden should rest, and there is where legal rules place

'the liability, unless some one not the owner holds himself out as the owner under such circumstances as to lead the public to deal with the corporation in reliance upon what is represented by the record of the holding in respect to ownership. This is not a case where the security right has ripened into absolute title, so the situation presents none of the aspects which result from full bank ownership under such conditions. Again, the primary object and purpose of such a holding is security for indebtedness. It is, therefore, a substantial departure from the original object in any case to find the holding not only worthless as security, but subject to an assessment to the amount of its par value. If, however, a party holds himself out as owner, and the public relies upon such holding as a fact, it would be unfair to allow the holder to relieve himself from liability, because he would thereby relieve himself at the expense of another, who was induced to act upon a situation which he had held out as being a true situation. So, under certain circumstances, the pledgee may be liable for the assessment. Liability, however, under such circumstances, would result, not from the primary legal obligation, but upon grounds of estoppel, which operate to reverse the primary legal status, by holding a party who, contrary to the fact, has held himself out as the owner, and permitted the public to deal with such conditions as representing the truth. It is only in clear cases that legal obligations which primarily rest upon one party are shifted and fastened upon another by operation of law. The case under consideration is not within this rule; for, while the record of the standing of the stock did not fully represent the conditions upon which it was held, it did suggest that the holding of the bank or the cashier was a qualified holding,—a holding less than that involved in full ownership,—and was therefore sufficiently suggestive of the character of the holding to put the public upon inquiry as to the fact of ownership, if any member of the public dealing with the bank had sufficient interest to make inquiry in respect to the actual conditions of the title to the stock. The argument in this case is that the record, "F. A. Cranston, cashier," etc., in effect means, and would naturally be accepted as indicating, ownership by the bank. We do not think this is so clearly that way as to present a situation which would justify holding the pledgee to the assessment on grounds of estoppel. One element of estoppel in pais is that the person relying upon estoppel shall have acted in actual reliance upon a situation, supposing it to be as represented. There is no evidence or argument of that kind in this case. How it would be if this questionable entry was supplemented by evidence of that character, we do not say. It is sufficient for the purposes of this case to say that the entry upon the books was of such a character as to suggest a qualified or representative holding, and such as to put the public upon inquiry; and, there being no evidence that the public or the Seattle Bank actually acted upon any belief or representation of ownership by the Providence Bank, the rules governing estoppel do not operate to create the liability contended for by the appellant. The decree of the circuit court is affirmed, with costs.