FOWLER v. CROUSE et al.

(Circuit Court of Appeals, Second Circuit. January 11, 1910.)

No. 50.

1. BANKS AND BANKING (§ 249*)—NATIONAL BANKS—DOUBLE LIABILITY OF STOCKHOLDERS—TRANSFER OF STOCK.

A stockholder in a national bank divests himself of the double liability imposed by the statute for the protection of creditors by a transfer of his stock when the bank is solvent, or even if insolvent, by a bona fide transfer without knowledge of the insolvency; the only ground for holding him liable after a transfer being fraud.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 916–918; Dec. Dig. § 249.*]

2. BANKS AND BANKING (§ 249*)—NATIONAL BANKS—DOUBLE LIABILITY OF
STOCKHOLDERS—TRANSFER OF STOCK.

The fact that a stockholder in a national bank having a capital of $200,-
000, at the time he sold and transferred his stock, was a director and was
dissatisfied with the management, is not sufficient to charge him with
knowledge of its insolvency, so as to render him liable for a subsequent as-
sessment on the stock, although it was in fact insolvent, where its assets
on their face largely exceed its liabilities, and it appeared that the direct-
ors were deceived as to their value.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 916-
918; Dec. Dig. § 249.*]

3. BANKS AND BANKING (§ 249*)—NATIONAL BANKS—DOUBLE LIABILITY OF
STOCKHOLDERS—TRANSFER OF STOCK.

The sale and transfer by defendant of stock in an insolvent national
bank *held* not shown to have been with intent to avoid the double liability
thereon, and therefore fraudulent, where he did not have knowledge of
the insolvency, and his sale was made at the instance of a broker, who
made him an offer for his stock, and apparently to persons who were re-
sponsible.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 916-
918; Dec. Dig. § 249.*]

Appeal from the Circuit Court of the United States for the North-
ern District of New York.

Suit in equity by Albert P. Fowler, receiver of the American Ex-
change National Bank of Syracuse, N. Y., against Charles M. Crouse
and others. Decree for complainant, and defendants appeal. Reversed.

The complainant is the receiver, appointed by the Comptroller of the Cur-
rency, of the American Exchange National Bank, a national banking associa-
tion located at Syracuse, N. Y. This bank began business as a state bank in
1897, and in 1900 was reorganized as a national bank with a capital of $200,-
000. The principal defendants are the executors of the will of Jacob Crouse,
deceased. For some years prior to December 15, 1903, they were the owners
of 70 shares of the capital stock of said bank standing in the name of "Jacob
Crouse Estate." Gertrude S. Quackenbush is also joined as a party defendant.
On December 15, 1903, 10 shares of said stock were transferred on the books
of said bank from said executors directly to said Quackenbush. On December
16, 1903, the remaining 60 shares of said stock were transferred by the exec-
utors to themselves as individuals, and in the latter capacity were then like-
wise transferred to said Quackenbush. For the purposes of this statement and
opinion, both transfers will be treated as if made directly from the executors
to said Quackenbush, and the executors will be considered the only parties de-
fendant. On February 14, 1904, the Comptroller of the Currency appointed a
receiver for said bank, and on August 9, 1904, in order to secure funds to meet
its obligations, levied an assessment of $67 upon each share of stock, and di-
rected the receiver to enforce the same. The assessment upon 10 shares of the
Crouse stock was paid by a person to whom said Quackenbush had transferred
them, but the assessment upon the remaining 60 shares has never been paid.
This suit was brought to enforce said assessment against said defendant exec-
utors, and a decree was rendered against them by the Circuit Court. Other
material facts are stated in the opinion.

Newell, Chapman & Newell, for appellants.
Fowler, Crouch & Vann, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). The na-
tional banking act for the protection of creditors imposes a double
liability upon stockholders in national banks. But this provision is

not intended to interfere with the right to freely transfer shares in such institutions. If the bank is prosperous, the transferee takes the place of the transferror, and the question of liability does not arise. If the bank is insolvent, and its insolvency is unknown to the seller, the transfer divests him of liability as a stockholder. To burden a seller with restrictions arising from unknown insolvency would practically take away his right to dispose of his shares. But if the insolvency of the bank is known to the seller, and he makes the transfer to an irresponsible transferee with intent to avoid the statutory liability, he is none the less liable. The gist of his liability is fraud. These principles are clearly established in a series of cases in the Supreme Court of the United States. McDonald v. Dewey, 202 U. S. 510, 26 Sup. Ct. 731, 50 L. Ed. 1128; Earle v. Carson, 188 U. S. 42, 23 Sup. Ct. 254, 47 L. Ed. 373; Stuart v. Hayden, 169 U. S. 1, 18 Sup. Ct. 274, 42 L. Ed. 639; Whitney v. Butler, 118 U. S. 655, 7 Sup. Ct. 61, 30 L. Ed. 266; Bowden v. Johnson, 107 U. S. 251, 2 Sup. Ct. 246, 27 L. Ed. 386; National Bank v. Case, 99 U. S. 628, 25 L. Ed. 448.

It is, however, unnecessary to examine them at length, because it is conceded by the complainant that in order to make out a case against these defendants he must establish these propositions: (1) That at the time the stock was transferred the bank was insolvent. (2) That the defendants then knew or ought to have known of such insolvency. (3) That the defendants made the transfer for the purpose of avoiding the statutory double liability. (4) That the defendants failed to show affirmatively that the purchaser of the stock was able to respond to the double liability.

The first inquiry, then, is whether the bank was insolvent on December 15, 1903, the date of the transfer. In the light of after events it would now seem that the bank was insolvent at that time. It suspended business in February, 1904, and the amounts realized from its assets have been insufficient to meet its obligations. There is nothing to indicate that there were any substantial losses between December and February. We shall consider it established that the bank was actually insolvent at the time of the transfer of the shares in question.

The second inquiry is whether the defendants at the time of the transfer knew or ought to have known that the bank was insolvent, and in considering this question we shall assume that the defendants, as executors, are bound by the knowledge of the defendant Charles M. Crouse, who was a director of the bank. This second inquiry is a very different one from the first. Knowing that the amounts actually realized from the sale of the bank's assets in the liquidation of its affairs were insufficient to meet its liabilities, we may properly conclude that the bank at the time of the transfer was insolvent. But the defendant Crouse, although a director of the bank, had not this knowledge. The assets of the bank upon their face largely exceeded its liabilities. Some of these assets were worthless. Some of them were of problematical value. The value of others depended upon the way in which they could be liquidated. It was manifest that the capital of the bank was impaired. It is clear that the defendant Crouse was dissatisfied with the management. We have no doubt that he had reason to be-

lieve that the bank, without new capital, could not continue to do a banking business. But we do not think it established that he knew, or as a director ought to have known, that the bank was insolvent—i. e., that after wiping out the capital entirely its assets were insufficient to pay its debts. Indeed, the testimony tends to show that the directors were deceived as to the value of certain assets, and believed certain debtors of the bank to be responsible who subsequently failed to meet their obligations. Moreover, the contention seems not wholly without foundation that, had the assets of the bank been disposed of under different conditions, much more might have been realized upon them. Furthermore, the fact that a person was endeavoring to buy a large interest in the bank, and was offering a substantial price for the stock, would indicate that the bank was not generally regarded as insolvent. For these reasons we think that the complainant has failed to establish his second proposition—knowledge of the insolvency of the bank upon the part of the defendants.

The third inquiry is whether the transfer was made with intent to avoid the double liability imposed by the statute. This inquiry is to a large extent answered by that which has been said regarding the last inquiry. If the defendants did not know that insolvency was impending, it could hardly be found that they endeavored to escape the consequences of insolvency. Moreover, the testimony seems to show clearly that the transfer was made in good faith in regular course of business. In a transfer of stock made to avoid the statutory liability, we should naturally expect to find the person attempting the fraudulent scheme the actor in bringing it about. We should look for his dummy or tool as the transferee. We should seek for a sham transaction. In the present case the defendant Crouse took no steps to dispose of the stock. He merely accepted the offer made by a broker who sought him out. The price agreed upon was paid. The purchase was a real one. The stock was transferred into the name of a person designated by the purchaser and not by the defendant. One Ratchford—a man considered responsible—was the apparent purchaser. A man named Robin—of actual responsibility—seems to have been interested with Ratchford in the transaction. While the transferee, Gertrude Quackenbush, was of no financial responsibility, the obvious reason why the stock was put in her name was to keep the names of the real buyers secret. Certainly Ratchford and Robin were not putting the stock in her name with intent to escape the double liability of stockholders of an insolvent bank. They were not buying blocks of stock in a bank at 55 cents or more on the dollar unless they believed it to be at least solvent.

As, therefore, the complainant has failed to show knowledge of the bank's insolvency and a fraudulent intent upon the part of the defendants, we are not called upon to consider whether the defendants have affirmatively shown that Ratchford was the real purchaser of the stock and that he was financially responsible.

The decree of the Circuit Court is reversed, with costs, and the case remanded, with instructions to dismiss the bill, with costs.