## SHAW, Banking Com'r, v. McMILLAN.
### (No. 3804.)

Court of Civil Appeals of Texas. Texarkana.
Feb. 8, 1930.

Rehearing Denied Feb. 13, 1930.

Clark, Harrell & Clark, of Greenville, for appellant.

McKinney & Berry, of Cooper, for appellee.

HODGES, J. The Cooper State Bank was organized in April, 1927, with a capital stock of $25,000. It thereafter became insolvent, and in October, 1928, was closed by the state banking commissioner. Some time later the commissioner assessed the stockholders of the bank 100 per cent. of the par value of their stock in order to meet the indebtedness of the bank. The appellee was among those against whom that assessment was made. He was assessed as the owner of five shares of stock. He paid the assessment on one share of the stock, but refused to pay more. This suit was then filed by the banking commissioner in the county court to collect $400, the remainder claimed under the assessment.

It was alleged in the plaintiff's original petition that the appellee was the owner and holder of four shares of stock at the time the bank was closed and the assessment made. Appellee answered, denying that he was the owner or holder of any stock in the bank at the time it failed, or any time thereafter. He specially pleaded that he had been solicited during the organization of the bank to subscribe for shares of stock, but had refused.

The appellant filed a supplemental petition, alleging, in substance, that the defendant was one of the original subscribers for stock and a party to the application for a charter at the time the bank was organized; that, after the incorporation, he voted his stock at a meeting held for the purpose of selecting officers for the bank, and continued to exercise dominion and control over the stock subscribed for. It was further alleged that, if the defendant was not then the owner of the stock, he had transferred it to some person or persons who were incapable under the law of being stockholders in a state bank, and for the purpose of evading his liability as a stockholder.

In a trial before the court without a jury, judgment was rendered in favor of the appellee denying any recovery. The banking commissioner appeals, and asks that the judgment be reversed upon the ground that it is contrary to the uncontroverted evidence.

The proof shows that the appellee was among those who signed the written application for the charter of the Cooper State Bank in April, 1297. In that application he made affidavit that he was worth $4,000 over and above his liabilities and exemptions. He is also among those whose names are signed to the charter of the bank. In the list of subscribers he appears as having in his own name subscribed and paid for five shares of stock of the par value of $100 each. The charter was filed by the secretary of state on April 5, 1927. The books of the bank show that a certificate for five shares of stock was issued to the appellee on May 19, 1927; and the books further show that on the same day he transferred one share of the stock to each of his four grandchildren, and one share to N. P. McMillan & Son, a partnership composed of the appellee and his son. The proof shows that at the time of those transfers two of the grandchildren were 19 years of age, one 17 years old, and the other 14.

The appellee testified that he never owned any of the stock in the bank individually; that the same day it was issued he transferred it to the parties above named; that, upon being notified of the assessment on the shares of stock, he paid on the one held by McMillan & Son. He had been asked to take stock in the bank, but did not want any stock individually. He admitted that he went to the stockholders' meeting, but claims that he was representing N. P. McMillan & Son. He said:

"I never subscribed for five shares, and never did anything except to transfer the five shares after they were issued to me individually. * * * I never received any stock certificate. It was issued to me, but I refused to take it. I told the officers of the bank to issue the five shares to the very parties to whom I transferred it—that is, one share to N. P. McMillan & Son and one each to my grandchildren. * * * The stock was first issued to me for five shares. I was notified by L. L. Allard, one of the officers of the bank, and went by the bank to call for the stock. When I saw that it had been issued to me I refused to take it, and I then transferred it to the parties I named before. * * * When I refused to take it and told the bank that I wanted it transferred Mr. Sparks, one of the officers, told me that the only way to transfer it was for me to make the transfer on the back of the certificate, and I said I would do it and did it. I always acted for the firm of N. P. McMillan & Son and the grandchildren when I attended a stockholders' meeting. The firm of N. P. McMillan & Son paid $500.00 for the stock. It was to be issued in five different certificates of one share each. * * * The only time I ever had the stock in my hand was when I took it and signed it on the back and transferred it the very day it was issued and the first time I ever saw it. I made then reissue to the other parties at the same time. After the bank issued the shares of stock to N. P. McMillan & Son and one each to my grandchildren I took and put the certificates in my safe, and later gave the four shares to each of the grandchildren as a Christmas gift. I took out the stock in good faith for my grandchildren, with the understanding that they were to exercise all dominion and control over it. Had the bank paid a dividend of one hundred per cent. I would not have claimed any part of the dividend because I had signed my rights away. I own the principal stock in N. P. McMillan & Son, which was a partnership composed of me and my son, Benton McMillan. I intended selling this stock which was owned by the firm as soon as I could, but the bank closed before I could sell it."

Again he said:

"The stock belonged to the grandchildren at all times. I kept the stock in the safe and surprised the boys at Christmas with it. Two of the shares went to my son Benton's two boys. I put this in the safe, and later gave it to the boys."

The witness admitted signing the following:

"April 2, 1927.

"I, a stockholder in the Cooper State Bank, cast my vote as the owner of five shares of the capital stock of said bank for W. G. Farrier, J. B. Farrier, J. W. White, Henry Sparks, Louis B. Taylor and R. M. Walker as Directors of said bank, to serve until the next annual meeting of the stockholders.

"N. P. McMillan."

When the organization of the bank was completed and the charter filed with the

secretary of state, which occurred on April 5, 1927, the stock subscribed for by the appellee belonged either to him or to the parties to whom he subsequently transferred it. Certainly the grandchildren had no claim of ownership to the stock until it had been delivered to them. They had not subscribed for any stock, nor had any been subscribed for in their names. No funds of theirs had been used in paying for the stock, nor is there any evidence of an agreement between them and the appellee that the stock should belong to them. The clear inference is that they had no notice that they were to become the owners of the stock until several months after the stock was issued. On the contrary, the stock had been subscribed for by McMillan in his own name, and had been paid for out of funds belonging to the partnership composed of himself and his adult son. Those transactions had the legal effect of vesting the title to the stock in McMillan alone, or in the partnership whose funds were used in its purchase. If the stock belonged to the firm, his liability in this suit would be the same as if it all belonged to him.

It may be true that McMillan intended to take the stock for the benefit of his grandchildren, but that bare intention could not vest them with the title until the stock was delivered to and accepted by them. McMillan's aversion to holding any stock in the bank may easily be attributed to his unwillingness to assume the personal responsibility which the law attaches to a stockholder in a state bank. His testimony indicates that he did not intend to retain ownership of the share transferred to his firm any longer than he could find a purchaser. It appears from the evidence that the Cooper State Bank was organized to succeed another similar institution in which the firm of N. P. McMillan & Son had on deposit approximately $1,400. While the evidence does not make it clear, there is ample room for the inference that the new organization was formed for the purpose of protecting the depositors of the older institution. There is no evidence that the new bank ever paid any dividends. The only just conclusion to be drawn from the facts is that ownership of stock in this new bank was more of a liability than an asset.

It has more than once been definitely decided in this state that one cannot be made a stockholder in a state bank by a transfer of stock without his knowledge or consent. Austin v. Strong, 117 Tex. 263, 1 S.W.(2d) 872, 875, 3 S.W.(2d) 425. The ownership of such stock carries with it a contingent liability equal to the par value of the stock. Hence a gift of such stock may often, as in this instance, prove a detriment rather than a benefit to the donee.

But, assuming that the transfer of this stock was an executed gift to the grandchildren, did that transaction relieve the appellee from his statutory liability as a stockholder? It is undisputed that the grandchildren were all minors, and there is no evidence that they ever asserted any control over the stock, or had done anything which would estop them from repudiating the transfer and returning the stock to the appellee. Article 537 of the Revised Civil Statutes provides:

"No person holding stock in such corporation as executor, administrator, guardian or trustee, and no person holding such stock as collateral security, shall be personally subject to any liability as stockholder in such corporation; but the person pledging such stock shall be considered as holding the same, and shall be liable as stockholder accordingly. The estate and funds in the hands of such executors, administrators, guardians or trustees shall be liable in like manner and to the same extent as the testator or intestate or the ward or person interested in such trust fund would have been if he had been living and competent to act and hold the same stock in his own name."

In the case of Furr v. Chapman (Tex. Civ. App.) 276 S. W. 475, 479, a stockholder sought to evade his liability by pleading that he held certain shares as trustee for a minor. The court held that he was personally liable on the ground that a minor was not capable of becoming a stockholder in a state bank. It quotes with approval the following from Kerr v. Urie, 86 Md. 72, 37 A. 789, 38 L. R. A. 119, 63 Am. St. Rep. 493:

"The appellant, however, contended that admitting that Mrs. Urie was authorized to hold the stock beneficially she did not so hold it, but in fact held it as attorney, agent, trustee or in some representative capacity. But it is clear from the evidence that she either holds as self-appointed attorney or trustee for an infant of tender years; for an undisclosed principal, as appears by the certificate, or personally and beneficially, as appears by the stub of the stock book of the bank. In neither event do we think she can evade the personal liability of a stockholder. If persons were allowed to subscribe for stock in a national bank or in any other corporation where a personal liability attaches either as attorney for an unnamed principal, as self-appointed trustee for some unnamed cestui que trust or as attorney for an unnamed infant of tender years, and when called upon to pay the debts of the bank to the extent of the stock so subscribed, could escape by simply declaring that they represented in some capacity those who are legally or otherwise incapacitated, the law would be a dead letter, and the creditors of these associations which are found in great

numbers in every state would be deprived of the only certain means provided by law for the payment of their claims."

In 3 Thompson on Corporations, § 3700, the author says:

"On the other hand, where a man subscribes for shares in the name of persons incapable of contracting, as for instance in the names of his infant children, the law will not allow him thereby to escape liability; it will look behind the record and charge the real owner."

In 1 Elliott on Contracts, § 309, the following language is used:

"It seems to be definitely settled that, unless expressly permitted by statute, an infant cannot become one of the corporators in the organization of a corporation. It is presumed that the legislature in authorizing persons to form corporations contemplates that such person shall be of full age."

Another distinguished writer says:

"A subscription for stock by an infant is a contract to be governed by the general rules of law that apply to contracts of infants generally. In general the subscription is voidable rather than void. He may repudiate it at majority, and thereby entirely escape liability; or he may ratify it, and thereby become fully bound, as though the subscription had been made after majority. Accordingly it is a settled rule that, where one subscribes for shares of stock in the name of an infant, he is liable personally to the corporation, or to the corporate creditors on the subscription." 1 Cook on Corporations (6th Ed.) § 67, p. 283.

In Austin v. Strong, supra, Judge Leddy, for the Commission of Appeals, said:

"The nature of the stock liability involved in this case seems to have been the frequent subject of judicial investigation. The conclusion has been generally reached in harmony with the decisions quoted from, that is, that such liability, though provided for by constitutional or statutory provision, is contractual in nature. (Citing numerous cases.) Since the relation of stockholder in a state bank can only be created by contract, express or implied, it necessarily follows that such relation, with its attendant liability, cannot be forced upon appellee by operation of the statute of descent and distribution. * * * It has been repeatedly held that, even if stock is issued to one with his knowledge, but without his consent, this fact alone does not render him liable as a stockholder."

That rule cannot be invoked to relieve the appellee, for the proof conclusively shows that he not only subscribed for the stock in his own name, but paid for it with his own or partnership funds. But the children stand in a different attitude. Even if they were adults, there is not sufficient evidence in the record to show that they had ever consented to become the owners of this stock.

We are of the opinion that the evidence conclusively shows that the appellee was liable as the owner of the four shares of stock. The judgment will therefore be reversed, and judgment here rendered in favor of the banking commissioner.