**HEIDEN v. CREMIN.**

No. 9504.

Circuit Court of Appeals, Eighth Circuit.

July 20, 1933.

944

Robert B. Pike, of Sioux City, Iowa (Larned F. Brown, of Sioux City, Iowa, on the brief), for appellant.

Harry S. Snyder and John S. Sears, both of Sioux City, Iowa, for appellee.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

STONE, Circuit Judge.

This is an action by the receiver of a closed national bank for the double stock liability. The defendant appears on the bank stock books as "Wm. J. S. Cremin, trustee." The theory of the action is that he is personally liable. His defense is that he is not the owner of the stock but holds purely as a trustee for his four minor children and, therefore, is not personally liable. Section 66, title 12 USCA. The trial court found that he held only as trustee and was not personally liable. The receiver appeals.

Before reaching the merits, we are met by a motion of appellee to dismiss the appeal. The ground of the motion is, in substance, that this is a law case tried to the court on waiver of jury; that there are no special findings of fact and none were requested by appellant nor was any motion for judgment made by him; that, in this situation of the record, there is nothing here for review. Without examining or determining this matter, we prefer to pass it by and affirm the judgment on the merits.

On the merits, appellant argues five points.

I. The first of these is that the statutory stock liability cannot be avoided by a conveyance of the stock to one not legally capable of assuming it and that this applies to a conveyance to a trustee for minors.

It is a well-established rule of law, applicable to corporations generally, that a transfer of stock must be made to one not only legally capable of holding stock but who may lawfully assume the obligations attaching to ownership of such stock—by assumption of obligations, financial responsibility is not meant but legal liability to respond. There is no reason why this rule should not apply to national bank stock and it has been so applied: As to minors, Early v. Richardson, 280 U. S. 496, 50 S. Ct. 176, 74 L. Ed. 575; Aldrich v. Bingham (D. C.) 131 F. 363.; Foster v. Chase (C. C.) 75 F. 797; and Foster v. Wilson (C. C.) 75 F. 797. As to national banks, Concord First National Bank v. Hawkins, 174 U. S. 364, 19 S. Ct. 739, 43 L. Ed. 1007; California Bank v..Kennedy, 167 U. S. 362, 17 S. Ct. 831, 42 L. Ed. 198; and Johnston v. Laflin, 103 U. S. 800, 26 L. Ed. 532. But this rule is not held to prevent transfer of stock to a trustee of a' valid trust. Ordinarily, the trustee may be required to respond to the obligation of the stock and either is allowed to recoup from the trust estate in his hands (Taylor v. Davis, 110 U. S. 330, 335, 4 S. Ct. 147, 28 L. Ed. 163) or the execution on the judgment against him runs only against the trust estate (Hampton v. Foster [C. C. Mass.] 127 F. 468). There is no doubt that such trustees may hold national bank stock, for section 66, title 12 U SCA, unmistakably, implies such by its provisions as to liability on stock so held. Also, that section leaves no doubt as to where the liability rests, for it expressly declares that "persons holding stock as * * * trustees, shall not be personally subject to any liabilities as stockholders" and such liability is expressly placed upon "the estates and funds in their hands" as such.

What reason can there be for judicial construction which will declare that a transfer of national bank stock to a trustee does not afford him the protection of section 66 solely because his cestui que are minors or otherwise incompetent? The parties primarily protected by the double stock liability and for whose benefit it exists are the creditors of the bank. Section 66 declares, as clearly as language can, that, as to trustees, administrators, executors, and guardians, the creditors are relegated to the "estate and funds in their hands" and are denied the personal liability of the trustee, administrator, executor, or guardian. If the creditor is relegated to such "estate and funds," it is quite clear that the beneficiaries thereof are in no wise liable any more than the trustees, etc., would be. What difference, then, can it make to the creditors who or what the beneficiary may be? It does not in the least affect or concern them.

Also, such a construction is opposed to one of the broad policies of the National

Banking Act. This policy is to permit great freedom in the transfer of national bank stock. In a very early case, First Nat. Bank v. Lanier, 11 Wall. 369, the court at page 377, 20 L. Ed. 172, said: "The power to transfer their stock is one of the most valuable franchises conferred by Congress on banking associations. Without this power, it can readily be seen the value of the stock would be greatly lessened, and, obviously, whatever contributes to make the shares of the stock a safe mode of investment, and easily convertible, tends to enhance their value." In a much later case, Earle v. Carson, 188 U. S. 42, the court at page 47, 23 S. Ct. 254, 47 L. Ed. 373, said this policy was one of the "essential features" of the act. In Third National Bank v. Buffalo German Ins. Co., 193 U. S. 581, 592, 24 S. Ct. 524, 48 L. Ed. 801, the court states this policy as being to encourage investment in such stock by facilitating transfers thereof. Also see McDonald v. Dewey, 202 U. S. 510, 533, 534, 26 S. Ct. 731, 50 L. Ed. 1128, 6 Ann. Cas. 419; and Bullard v. Bank, 18 Wall. 589, 595, 596, 21 L. Ed. 923. Clearly, a construction which would make it unsafe to trustees and guardians to invest in such stock would remove a class of buyers and holders from the market and run directly counter to this important policy which the Supreme Court has repeatedly announced was one of the features of the act.

Obviously, this should not be done unless there is some compelling announcement in or necessarily drawn from the act itself. But to reach such a result would do violence to the purpose declared in section 66. The section reads that "trustees" and "guardians" shall not be personally liable; that only the "estate and funds in their hands" shall be liable and, therefore, that the beneficiaries shall not be personally liable. Yet this construction would make trustees and guardians personally liable for the sole reason that the beneficiaries could not assume a liability from which the section itself frees them. When this is sought on the ground that the beneficiary is a minor (a legal incompetent), the vice is emphasized because "guardians" are appointed only for legal incompetents (more often minors than otherwise) and trusts are an established method by which to protect and provide for minors and other incompetents. Not only does no provision of the act justify this limitation of the above general policy of freedom of transfer, but such limitation is directly opposed to the wording and spirit of this very section of the act.

However, appellant contends that his position is sustained by five cited cases. The first is Early v. Richardson, 280 U. S. 496, 50 S. Ct. 176, 177, 74 L. Ed. 575. The Early Case involved an attempted out and out gift to minors and the decision clearly applies to a gift alone. In holding such a transfer ineffectual to relieve the transferor from the double stock liability, the court but applied the long-established rule as to transfer of corporate stocks generally—a rule which had long theretofore been applied by the lower federal courts to national bank stock transfers (Aldrich v. Bingham [D. C.] 131 F. 363; Foster v. Chase [C. C.] 75 F. 797; and Foster v. Wilson [C. C.] 75 F. 797) and, inferentially, announced by the Supreme Court itself (Concord First Nat. Bank v. Hawkins, 174 U. S. 364, 19 S. Ct. 739, 43 L. Ed. 1007; California Bank v. Kennedy, 167 U. S. 362, 17 S. Ct. 831, 42 L. Ed. 198; and Johnston v. Laflin, 103 U. S. 800, 26 L. Ed. 532). That opinion has but one brief reference to any trust relation. It appears that, during the argument, the thought was presented that the donor might be regarded as a trustee for the minors. The court disposes of this shortly by saying that this was a gift and not a trust relation. In stating there is no merit in the suggestion, the court said "even if that would enable him to avoid personal liability, Johnson v. Laflin, 5 Dill. 65, 82, Fed. Cas. No. 7,393." Obviously, this statement was associated with the expression in the citation. In the Johnson Case (appearing later in 103 U. S. 800, 26 L. Ed. 532), Britton (president of a national bank) purchased, with bank funds, stock in the bank from a broker of Laflin, the seller. After receiving from the broker blank indorsed certificates and blank power of attorney to transfer, Britton had transfer made on the books of the bank but no new certificates issued. The stock transfer book showed "James H. Britton, trustee," and the stock ledger, "James H. Britton, trustee for bank" (meaning this bank). Laflin did not know who the purchaser was and the broker did not know either that the purchase was for the bank or with bank funds but supposed it a personal purchase by Britton. After insolvency of the bank, its receiver sued Laflin for return of the purchase price and for retransfer of the shares to his name. After "assuming, without deciding" (page 81 of 5 Dill., Fed. Cas. No. 7,393) that the English rule (under the Companies Act), to the effect that a transferor remains liable until a transfer has been registered to one capable of holding and assuming the stock liability, applies to na-

tional bank stock, and after stating that the registration here was to Britton as "trustee" without Laflin's knowledge, Judge Dillon (page 82 of 5 Dill., Fed. Cas. No. 7,393) said:

"But the act (Rev. St. § 5152 [12 USCA § 66]), authorizes the holding of stock by a trustee. If Laflin, in order to relieve himself of liability, is bound to see the transfer of the stock registered, the registry actually made would not charge him with constructive notice that the bank was in reality the cestui que trust.

"Britton is responsible personally, inasmuch as he had no authority to act for the bank, and as there is no cestui que trust who is liable. He is liable for the unauthorized investment and use of the trust money of the bank, and can be compelled to refund it. Great Eastern Railway Co. v. Turner, 8 Ch. App. 149. If it becomes necessary to assess the stockholders, he will be estopped to say that he is not individually responsible, since he was not acting by authority of any cestui que trust capable of taking and holding the shares. If the sale of this stock had been registered to Britton individually, it is clear that Laflin would not have been liable to the bank or its creditors; and, as the matter now stands, the bank and its creditors have every right and remedy against Britton which they would have had if the shares had been transferred to him individually instead of to him as 'trustee.'"

The gist of this statement (pertinent here) is that Britton "will be estopped to say that he is not individually responsible, since he was not acting by authority of any cestui que trust capable of taking and holding the shares." Undoubtedly, the statement above quoted from the Early Case, referring to this quotation from the Johnson Case, expresses a passing quaere as to the effectiveness of a tranfer to a trustee for minors under the facts of the Early Case but it goes no further. That quaere should cause careful examination of the question presented by the facts of our case, but it is no *authority* for the proposition that a trustee for minors is always, and because the beneficiaries are minors, liable personally for the double liability on national bank stock held in good faith only as trustee when section 66 expressly declares he shall not be so liable.

The four other citations are Conner v. McSween, 164 S. C. 438, 162 S. E. 434; Shaw v. McMillan (Tex. Civ. App.) 24 S.W.(2d) 536; Furr v. Chapman (Tex. Civ. App.) 276 S. W. 475; and Kerr v. Urie, 86 Md. 72, 37 A. 789, 38 L. R. A. 119, 63 Am. St. Rep.

493. The Conner Case involved a South Caroline state bank where there was a constitutional and statutory imposition of double liability with no statutory provision as to trustees and others as in section 66. The Shaw Case is a gift and not a trust case. The Kerr Case involved national bank stock and a portion of the opinion supports this appellant. The Furr Case involved state statutes similar to the national bank statutes and follows the Kerr Case. In the Kerr and Furr Cases, it is doubtful whether the holding would have been the same except for the emphasized situation that the principal (cestui que) was undisclosed on the stock books. Directly opposed to the two state court cases (the Kerr and the Furr Cases, supra) are McNair v. Darragh, 31 F.(2d) 906 (C. C. A. 8); Fowler v. Gowing, 165 F. 891 (C. C. A. 2); and Lucas v. Coe, 86 F. 972 (C. C. N. Y.). It may or may not be significant that certiorari was denied in the McNair Case (sub. nom. Gamble v. Darragh, 280 U. S. 563, 50 S. Ct. 19, 74 L. Ed. 617) at the same term the Early Case was heard and determined.

So far as judicial authority is concerned, appellee here seems to have the best of the argument.

In construing sections 62 and 63 (title 12 USCA), imposing the double stock liability, and section 66, relating to the same subject in so far as trustees, administrators, executors, and guardians are involved, it is obvious that all of these sections should be construed together with the purpose of making them harmonious and preventing one from destroying or unduly limiting the others. In this way only can the legislative intent be given its fullest fruition. Thinking along this line, it is evident that no limitation should be placed on one of the sections, because of the others, which is not necessary to prevent defeat of the entire purpose of all of them. Thus viewed, and because of what has been said above, there seems no basis for declaring that section 66 is not applicable, under any and all sets of facts, where the beneficiary is an incompetent and solely because of such incompetency.

There may well exist limitations upon the application of section 66, but they are in no way related to the competency of the beneficiary. Examples of such are the following. Where there was no existing trust estate and where the beneficial owner (legally competent) had the shares placed in a mere holding trust for it. Keyes v. Am. Life & Accid. Ins. Co., 1 Fed. Supp. 512 (Ky. D. C.). A

similar instance is where there is a "dry" trust with the trustee merely holding the legal title much as an agent or stakeholder. English v. Gamble, 26 F.(2d) 28 (C. C. A. 8). This is but applying the oft-repeated rule that registered ownership can be pierced through to the real owner of the stock and it makes no difference that the registered owner appears as an unqualified owner or as a trustee, pledgee, or some other representative capacity. Another instance is where the trust is "tentative" and has never become irrevocable upon the owner. Ambrosius v. Ambrosius, 239 F. 473 (C. C. A. 2). Also, it might well be held that even the most formal creation of a trust would not relieve the creator thereof if it contained a reserved power of revocation in him—this is in line with the income tax cases. Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916. Both the Ambrosius and the Corliss Cases are based upon the theory that the creator of the trust has not parted irrevocably with the title or ownership. Also, a trustee might make himself liable because of devastavit, as has been held concerning administrators and executors. Luce v. Thompson, 36 F.(2d) 183, 186 (C. C. A. 8); Gilbertson v. McCarthy, 32 F.(2d) 635, 668 (C. C. A. 8); Miller v. Hanner, 269 F. 891, 895 (C. C. A. 3); Rankin v. Miller, 207 F. 602, 613 (Del. D. C.). Of course, a creation of a trust and conveyance to a trustee would not relieve the transferor where made with knowledge of insolvency and impending failure of the bank and to escape the liability, but this is because of the rule that such transfers are frauds upon the creditors and, in such instances, it is attachment of liability to the transferor and not to the trustee which is involved. But where there is a real trust and the transfer of the stock to such trustee is made and accepted bona fide, there is no reason why section 66 should not apply if it is to be given any force whatever.

■ II. Under two headings, appellant argues phases of the same proposition. The proposition is that defendant appeared on the bank books as a stockholder; that the addition of the word "trustee" on those books does not prevent estoppel of him claiming his holding was as a trustee. Undoubtedly, any one who permits his name to appear as a stockholder—that is, as owner of the stock—is liable through estoppel. Lantry v. Wallace, 182 U. S. 536, 21 S. Ct. 878, 45 L. Ed. 1218; Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 45 L. Ed. 822; Aspinwall v. Butler, 133 U. S. 595, 10 S. Ct. 417, 33 L. Ed. 779; Delano v. Butler, 118 U. S. 634, 7 S. Ct. 39, 30 L. Ed. 260. The entire basis of this "book" liability is estoppel based on the showing on the books of ownership which, by the statute, are made available to inspection of creditors and, presumably, are a basis for their dealings with the bank. If a person appears on the stock books by name without qualification, he appears as owner and, as such, is subject to estoppel. But where the stock books, to which the creditor is given access, show that one does not hold as owner but in some qualified capacity (as trustee, guardian, etc.), there cannot be spelled out an estoppel to hold him as owner. The unimpeachable reason is that the creditor has never been led to think him owner by a representation which declares he is not owner. This has been determined and the reasons stated in Pauly v. State L. & T. Co. 165 U. S. 606, 17 S. Ct. 465, 41 L. Ed. 844. An exactly similar case to the one here is Fowler v. Gowing, 165 F. 891 (C. C. A. 2). Also see Duncan v. Jaudon, 15 Wall. 165, 175, 176, 21 L. Ed. 142; Lucas v. Coe, 86 F. 972 (C. C. N. Y.); Welles v. Larrabee, 36 F. 866 (C. C. Iowa); also see Williamson v. Am. Bank, 185 F. 66 (C. C. A. 4); and Baker v. Old Nat. Bank (C. C.) 86 F. 1006, affirmed in Frater v. Old Nat. Bank, 101 F. 391 (C. C. A. 1), in both of which cases the registered stockholder appeared as "cashier"; and Beal v. Essex Savings Bank, 67 F. 816, (C. C. A. 1), where after his name appeared, "Collateral." These decisions are a complete answer to this proposition advanced by appellant.

■ III. Another proposition advanced by appellant is that section 66 (USCA title 12) is supplemental and does not qualify the general rule of liability under sections 62 and 63 (USCA title 12); that a judgment against a trustee (presumably also a guardian, administrator, or executor) as holder of the legal title is valid and his relief, under section 66, comes through the form of execution. This cannot be in the face of the clear statement in section 66 that such representatives "shall not be personally subject to any liabilities as stockholders."

Two cases are cited to support this remarkable doctrine. Hampton v. Foster, 127 F. 468 (C. C. Mass.), is not really in point although there are expressions to the effect contended by appellant. Parker v. Robinson, 71 F. 256 (C. C. A. 1), is in point. The opinion is short; made up of declarations and with no reasons stated for the rules declared. No good reasons could be stated.

The decision is destructive of section 66 unless the decision be treated as a mere application of Massachusetts practice. See Fowler v. Gowing, 152 F. 801, 815 (C. C. N. Y.). In this connection is cited also Taylor v. Davis, 110 U. S. 330, 334, 335, 4 S. Ct. 147, 28 L. Ed. 163. The gist of the citation (pages 334, 335) favorable to appellant is expressed on page 335 of 110 U. S., 4 S. Ct. 147, 150, as follows: "When a trustee contracts as such, unless he is bound, no one is bound, for he has no principal. The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee. As a trustee holds the estate, although only with the power and for the purpose of managing it, he is personally bound by the contracts he makes as trustee, even when designating himself as such. The mere use by the promisor of the name of trustee or any other name of office or employment will not discharge him. Of course, when a trustee acts in good faith for the benefit of the trust, he is entitled to indemnify himself for his engagements out of the estate in his hands, and for this purpose a credit for his expenditures will be allowed in his accounts by the court having jurisdiction thereof." But this quotation is immediately followed by this sentence: "If a trustee contracting for the benefit of a trust wants to protect himself from individual liability on the contract he must stipulate that he is not to be personally responsible, but that the other party is to look solely to the trust estate." The obvious difficulty of applying this general rule as to trustees (bank stock not being involved in the Taylor Case) is that section 66 supplies the rule which must govern national bank stocks and it provides that the trustee shall not be personally liable but that liability shall rest on the trust estate and funds.

In Davis v. Weed, 7 Fed. Cas. page 186, No. 3,658, 44 Conn. 569, 2 Browne, Nat. Bank Cas. 115, Judge Shipman, in speaking of the present section 66, well said: "The principal object of the section was to prevent a personal liability from running against executors, administrators, trustees or guardians who had purchased as trustees, or to whom had been transferred in their names, as trustees of national bank stocks for the benefit of the trust estates. Having by such purchase voluntarily entered into a contingent liability for assessments, it might be claimed that a judgment de bonis propriis could be rendered against them. The main object of the section was to prevent personal judgments being rendered against such persons in whom the stock stood on the books of the bank, as trustees."

IV. The final proposition is that the evidence did not support the finding of the trial court that defendant held as trustee for his minor children and not in his own right. The contention is that the creation of a voluntary trust by declaration must show with reasonable certainty the property, objects, and definite beneficiaries competent to enforce it in a court of equity. This presents the really serious proposition of this appeal.

Clearly, when section 66 declares trustees and others exempt from this stock liability, it contemplated actualities and not mere forms. There could be no "trustees" unless they represented actual trusts. If no trust really existed, there could be no trustee who could hold as such and the facts that he designated himself as such on the certificates and on the bank stock books (even though the cestui que were set forth) and even honestly regarded himself as such could not make him such or relieve him from personal liability. While all elements of estoppel would be absent, this is but an instance of determining actual ownership.

The challenge here is that no trust is shown. Since the defense here is based on section 66, which is an exception to the general rule of liability, and is pleaded as a defense, the burden is upon defendant to show the status upon which he relies to relieve himself. When it comes to making this proof, defendant is faced with the established rules as to what is necessary to constitute a valid trust. Also, as to how, as an evidentiary matter, the trust is to be shown. "It needs no particular form of words to create a trust, so there be reasonable certainty as to the property, the objects, and the beneficiaries." Chic., M. & St. P. Ry. Co. v. Des Moines Union Ry. Co., 254 U. S. 196, 208, 41 S. Ct. 81, 86, 65 L. Ed. 219. A trust in personal property may be created by parol. Allen v. Withrow, 110 U. S. 119, 3 S. Ct. 517, 28 L. Ed. 90. Such a trust may be established by parol evidence (same case, page 129 of 110 U. S., 3 S. Ct. 517) "but such evidence must be clear and convincing" (same, page 130 of 110 U. S., 3 S. Ct. 517, 524). Considering the useful public policy evident in the provision of the act establishing this double stock liability, the necessity of safeguarding that policy from evasion and the facility with which incomplete trust devices might lend themselves to such evasion, it seems particularly prudent to require that proof bringing a stockholder within the exception of section 66 should be "clear and convincing."

The proof here contains no formal writ-

ten or oral declaration creating a trust and defining its terms. It is the not unusual case of a father endeavoring to make provision for his children by putting property in himself as trustee for the children. He was a doctor and did this in his own way. The question is whether what he did and said clearly show a trust. In considering this evidence, what he did in connection with the alleged trust is pertinent. Ambrosius v. Ambrosius, 239 F. 473, 476 (C. C. A. 2).

The undisputed evidence is, substantially, as follows: Defendant had four minor children (girls). He had been appointed guardian for them and as such, maintained separate savings accounts for each child. He had bought with his own money 150 shares of Cudahy stock which he gave the children and had issued in four certificates—each being to him as trustee for a named child. The dividends from the stock were placed by him in the respective savings accounts. Thereafter, and on May 16, 1923, he bought these 150 shares in the Sioux National Bank. He bought this stock from J. A. Magoun, who was president of the bank. Magoun testifies defendant told him he was buying the stock for his four children. He received a receipt, on that date, as follows:

"Received from William J. S. Cremin, Trustee, $27,000.00 Twenty seven thousand Dollars in payment of certificates representing 150 shares of the capital stock of the Sioux National Bank, said certificates to be issued in his name as Trustee as follows: two certificates, 38 shares each, two certificates, 37 shares each. (4 certificates, total 150 shares).
"Sioux National Bank.
"By J. A. Magoun, Prest."

The stock book stubs showed four certificates (two for 38 shares and two for 37 shares each) each issued to "Wm. J. S. Cremin, Trustee," and receipted for by "Wm. J. S. Cremin, Trustee." Payment for this stock was by $2,000 cash (his money) and his two notes for $14,000 and $10,000. On May 1, 1924, certificates for 25 shares each in the stock of American Mortgage Company were issued in the names of the respective children. Also, there were certificates for 5 shares each in the Baltimore & Ohio Railway Company issued to each of the children. The record does not show where or how the shares of these two companies came to the children. Dividends from the Cudahy, Sioux National Bank, American Mortgage Company, and Baltimore & Ohio Railway Company, as well as interest from "Bonds" (not further identified), were placed in the above savings accounts. In 1925, or 1926, he sold the Cudahy stock for "about $15,000.00." He applied the savings accounts on the above notes and "applied the $15,000.00 [from Cudahy stock] in final settlement to the purchase price of the bank stock." The certificates for the bank stock were not produced and were said by defendant to have been mislaid.

While this record (partially narrative) is rather meager and loose, it shows several things: That defendant had, rather crudely, attempted to establish a trust for his children (separately) before this stock was acquired and had placed therein valuable stock purchased with his money. That stock was ordinary corporate stock, presumably without a double stock liability. At the same time, he was their appointed guardian and conducting, as such, a savings account for each of the children. Into these accounts went the dividends from this stock held in trust. Thereafter, he bought this bank stock as "trustee," having it issued in four certificates as near equal as possible. At the time of the purchase he told the seller he was buying for his four children, and the four certificates and the payment receipt were made to him "as trustee" and were receipted for or signed by him as such. He paid for this stock partially himself but more than half from the savings accounts and from the proceeds of sale of the stock held, theretofore, by him as trustee. His good faith is not questioned. We think these facts show the existence of a trust before this stock was bought and a lively interest in making separate provision for his children in other ways. The purchase of this bank stock was apparently in the best faith and for the purpose of placing it in the same trust condition as the Cudahy stock. Apparently, his intention had been to augment the trust estate by this stock and pay for it himself. Whether that be true, the fact resulted that he later sold property belonging to the trust and used it to pay the balance due on the purchase of this bank stock.

While the transactions reveal the lack of completeness and clarity usually found where a layman wanders into fields requiring legal guidance, yet it is clear that there was entire good faith and that enough was done and done in a way to evince an executed and publicly stated intention to form a trust for the children. Obviously, he dealt freely with all of these stocks, but at all times his dealings recognized the trust relation and were in harmony therewith.

While courts should be diligent to preserve the protection for creditors designed by the statutory double stock liability, yet they should not carry that diligence so far as to make it perilous for men honestly to deal in bank stock. As said above, an equally important purpose of the act was to make these shares attractive, and obviously they would be carefully avoided by investors if they could not be dealt in freely by those acting honestly with no purpose of evading the statutory liability. As said in the Second Circuit in speaking of the double liability section: "But this provision is not intended to interfere with the right to freely transfer shares in such institutions." Fowler v. Crouse, 175 F. 646, 647. Also, in speaking of the present section 66, Judge Blodgett (D. C. N. D. Ill.) said: "The object of this section undoubtedly was to encourage the investment of trust funds in this class of corporations by relieving the trustees from personal liability." Irons v. Manufacturers' Bank, 21 F. 197, 199.

The evidence seems to us to be clear that an irrevocable trust for these children was shown to be established. This case is on all fours with McNair v. Darragh, 31 F.(2d) 906 (C. C. A. 8); Fowler v. Gowing, 165 F. 891 (C. C. A. 2); and Lucas v. Coe, 36 F. 972 (N. Y. C. C.). There are good discussions of the subject in the Fowler and Lucas Cases.

The decree should be, and is, affirmed.

VAN VALKENBURGH, Circuit Judge (concurring).

I agree that the evidence sufficiently discloses that appellee, prior to the purchase of the bank stock, had in good faith established a trust estate for his children, and that he purchased and held this bank stock as trustee for the estate theretofore existing. Therefore I fully concur in the disposition made of this appeal.