ADAMS v. ADAMS.

1. When on a bill by a wife against her husband to establish a deed of trust to a third party in her favor, and now in the husband's possession, which deed she alleges that he executed and *delivered*, the husband, in an answer responsive to her bill, denies that he did deliver it, his denial comes to nothing if he admit in the same answer certain facts, as, *ex. gr.*, that he signed and sealed it, acknowledged it before a proper magistrate, and put it upon record; facts which of themselves may, under the circumstances of the case, constitute a delivery. In such a case he denies the law simply.

2. When husband and wife join in making a deed of property belonging to him, to a third party, in trust for the wife, the fact that such party was not in the least cognizant of what was done, and never heard of nor saw

---

[*] 2 Wallace, 95.

the deed until long afterwards, when he at once refused to accept the trust or in any way to act in it, does not affect the transaction as between the husband and wife.

3. A deed by husband and wife conveying by formal words, *in præsenti,* a portion of his real property in trust to a third party, for the wife's separate use, signed, sealed, and acknowledged by both parties, all in form and put on record in the appropriate office by the husband, and afterwards spoken of by him to her and to other persons as a provision which he had made for her and her children against accident, here sustained as such trust in her favor, in the face of his answer that he never "delivered" the deed, and that owing to the disturbed and revolutionary character of the times (the rebellion then, August, 1861, apparently waxing strong), and the threatened condition of the Federal city and other contingencies growing out of the war, he had caused the deed to be made and *partially* executed, so that upon short notice he could deliver it and make it effectual, retaining in the meantime the control of the title; and that he had himself put it on record, and that it had never been out of his possession except for the time necessary to have it recorded. This decision made, though the person named in the deed as trustee never heard of the deed until years afterwards, when he was called on by the wife, she being then divorced from her husband, to assert the trust.

APPEAL from the Supreme Court of the District of Columbia. The case was thus:

Adams, a government clerk, in Washington, owning a house and lot there, on the 13th of August, 1861, executed, with his wife, a deed of the premises to one Appleton, in fee, as trustee for the wife. The deed by appropriate words *in præsenti* conveyed, so far as its terms were concerned, the property for the sole and separate use of the wife for life, with power to lease and to take the rents for her own use, as if she was a *feme sole;* the trustee having power, on request of the wife, to sell and convey the premises in fee and pay the proceeds to her or as she might direct; and after her death (no sale having been made), the trust being that the trustee should hold the property for the children of the marriage as tenants in common, and in default of issue living at the death of the wife, then for Adams, the husband, his heirs and assigns.

The deed was signed by the grantors, and the husband acknowledged it before two justices "to be his act and

deed." The wife did the same; being separately examined The instrument purported to be "signed, sealed, and delivered" in the presence of the same justices, and they signed it as attesting witnesses. The husband put it himself on record in the registry of deeds for the county of Washington, D. C., which was the appropriate place of record for it.

Subsequent to this, that is to say in September, 1870, the husband and wife were divorced by judicial decree.

And subsequently to this again, that is to say, in December, 1871—the husband being in possession of the deed, and denying that any trust was ever created and executed, and Appleton, on the wife's request, declining to assert the trust, or to act as trustee, Mrs. Adams filed a bill in the court below against them both, to establish the deed as a settlement made upon her by her husband, to compel a delivery of it to her; to remove Appleton, the trustee named in it, and to have some suitable person appointed trustee in his place.

The bill alleged the making of the indenture on the day of its date, set forth the trusts as above given, appended a copy of it as part of the bill, alleged the fact and place of record of the original, and averred that the original indenture, after being duly signed, sealed, acknowledged, and *delivered* by the parties thereto, was recorded at the exclusive expense and express instance and request of the husband, Adams, who afterwards, as the friend of the complainant and the agent of Appleton, the trustee, obtained possession of the original, which was still in his custody or under his control.

The bill further alleged the dissolution of the marriage by law, and that the complainant, relying upon the provisions of the deed referred to, neither sought nor obtained alimony in that suit; and further, that she had accepted, and still accepted the benefits of the trust; that Appleton declined to act as trustee, to allow the use of his name, or in any way to aid her in the matter; that her husband, the defendant, was in possession, receiving the rents and profits, and declined to acknowledge her rights in the premises.

Adams, the husband, after denying that the allegation of

the bill was true in manner and form as stated, answered as follows:

"I admit that a certain indenture was made, but it never was executed and delivered to the said Appleton, or to any other person in his behalf, or to his use, either by myself or by any person whatever. I never at any time intended to deliver said deed so as to render it valid and effectual in law, but designedly retained said deed in my own possession without any delivery whatever.

"I admit that I placed said deed on record in the registry of deeds of the county of Washington, and it never has been out of my possession except for the time it was necessary to be recorded.

"I admit and aver the fact to be that owing to the disturbed and revolutionary character of the times and the threatened condition of the city of Washington, and other contingencies growing out of the state of war then existing, I caused said deed to be made and partially executed, so that upon short notice I *could* deliver it and make it effectual, or make such other changes of the title as I might think proper growing out of any changed circumstances, retaining, in the meantime, the future control of the title to the same; that said deed was not delivered to my then wife, nor did I intend to make it a settlement upon her; that I have kept and maintained possession of the premises, making, in the meantime, extensive repairs and improvements upon the property, paying the taxes and insurance, and collecting the rents issuing from the same, and I most emphatically deny the existence of any such trust as the plaintiff, in her bill of complaint, alleges to exist and seeks the aid of this court to enforce."

Appleton also answered, alleging that if any such deed as described was executed, it was executed without his knowledge or consent; that no such deed was ever delivered to him, and that he never accepted any trust imposed by it; that he was never informed of the existence of the deed till 1870, when he was informed of it by the complainant, and that he then declined to act as trustee.

Mrs. Adams, the complainant, was examined as a witness. She stated that the defendant told her that he wanted to

make over this house to her and her children, to be for their sole and entire use while she lived and for the children after her death.  She stated further that she had entire confidence in her husband, so much so that she never took the paper, but left it in his possession, thinking that her interests were perfectly safe in his hands; that she saw it frequently, and that there was nothing to prevent her taking possession of it; that this deed was a frequent subject of conversation between her husband and herself, and that he always spoke of it as making the property over to her during her lifetime, and to her children after her death, and that the deed was always understood between them to be good and valid. None of these statements were denied by Mr. Adams.

Testimony of the same character was given by other witnesses.  One (the brother of the complainant) testified that the defendant told him emphatically that the house and lot was made over to the complainant as her property, as a provision for the support of herself and children against accidents.  This witness specified three different occasions on which these statements were made, giving the details of the conversations.  The defendant made no denial of these statements.

Another witness (a sister-in-law of the complainant) gave testimony to the same purport, giving one conversation in detail.  No denial of her statements was made by the defendant.

There were no other witnesses.  Neither of the defendants testified.

The court below declared the trust valid and effective in equity as between the parties; appointed a new trustee; required the husband to deliver up the deed to the wife or to the new trustee; and to deliver also to him possession of the premises described in the deed of trust, and to account before the master for the rents and profits of it which had accrued since the filing of the bill, receiving credit for any payment made to the complainant in the meantime, and to pay the complainant's costs of the suit.

From a decree accordingly, the husband appealed.

*Messrs. T. J. D. Fuller and E. Lander, for the complainant; Messrs. W. W. Boyce and John Selden, contra.*

Mr. Justice HUNT delivered the opinion of the court.

The first question in this case is whether there was a delivery of the deed of August 13th, 1861. If not a formal ceremonious delivery, was there a transaction which, between such parties and for such purposes as exist in the present case, the law deems to be sufficient to create a title? The bill avers that the deed was delivered by the parties and put on record in the way which it states.

The answer is responsive to the allegations in the plaintiff's bill that the deed, after being signed, sealed, and delivered, was recorded at the request of the defendant, Adams, and at his expense.

The burden is thus imposed upon the plaintiff of maintaining her allegation by the proof required where a material allegation in the bill is denied by the answer.

It is evident, however, that the apparent issues of fact and seeming contradictions of statement become less marked by looking at what the parties may suppose to constitute a delivery. That the defendant signed and sealed the deed he. admits. That with his wife, the present plaintiff, he acknowledged its execution before two justices of the peace, and that the deed thus acknowledged by him not only purported by words *in præsenti* to grant, bargain, and convey the premises mentioned, but declared that the same was signed, sealed, and delivered, and that this deed, with these declarations in it, he himself put upon the record, is not denied. If these facts constitute a delivery under circumstances like the present, then the defendant, when he denies that a delivery was made, denies the law simply.

Mrs. Adams and two other witnesses were examined. None of Mrs. Adams's statements are denied by Mr. Adams. He was as competent to testify as she was. So, although time, place, and circumstances are pointed out in the testimony of one of the other witnesses, the defendant makes no denial of the statement; nor does he deny the statement

of the other witness giving her conversation with him, in detail, in which she says that he admitted the trust.

The deed corresponded substantially with the intention which these witnesses state that Adams expressed. Should the property be sold by the order of Mrs. Adams, the money received would be subject to the same trusts as the land, to wit, for the use of Mrs. Adams during her lifetime and her children after her death. It would not by such transmutation become the absolute property of Mrs. Adams.

Upon the evidence before us we have no doubt that the deed was executed, acknowledged, and recorded by the defendant with the intent to make provision for his wife and children; that he took the deed into his own possession with the understanding, and upon the belief on his part, that he had accomplished that purpose by acknowledging and procuring the record of the deed, by showing the same to his wife, informing her of its contents, and placing the same in the house therein conveyed in a place equally accessible to her and to himself.

The defendant now seeks to repudiate what he then intended, and to overthrow what he then asserted and believed he had then accomplished.

It may be conceded, as a general rule, that delivery is essential, both in law and in equity, to the validity of a gift, whether of real or personal estate.* What constitutes a delivery is a subject of great difference of opinion, some cases holding that a parting with a deed, even for the purpose of recording, is in itself a delivery.†

It may be conceded also to have been held many times that courts of equity will not enforce a merely gratuitous gift or mere moral obligation.‡

These concessions do not, however, dispose of the present case.

1st. We are of opinion that the refusal of Appleton, in 1870, to accept the deed, or to act as trustee, is not a controlling circumstance.

---

* 12 Vesey, 39 and note, Antrobus *v.* Smith.
† Cloud *v.* Calhoun, 10 Richardson's Equity, 362.          ‡ Ib.

Although a trustee may never have heard of the deed, the title vests in him, subject to a disclaimer on his part.\* Such disclaimer will not, however, defeat the conveyance as a transfer of the equitable interest to a third person.† A trust cannot fail for want of a trustee, or by the refusal of all the trustees to accept the trust. The court of chancery will appoint new trustees.‡

The case turns, rather, upon the considerations next to be suggested.

2d. By the transactions already detailed, and by the declarations of Mr. Adams, already given, was there created a trust which the parties benefited are entitled to have established by a court of chancery?

Mr. Lewin, in his work on Trusts,§ thus gives the rules on this subject:

"On a careful examination the rule appears to be, that whether there was transmutation of possession or not, the trust will be supported, provided it was in the first instance perfectly created. . . . It is evident that a trust is not perfectly created where there is a mere intention or voluntary agreement to establish a trust, the settlor himself contemplating some further act for the purpose of giving it completion. . . . If the settlor propose to convert himself into a trustee, then the trust is perfectly created, and will be enforced so soon as the settlor has executed an express declaration of trust, intended to be final and binding upon him, and in this case it is immaterial whether the nature of the property be legal or equitable. . . . Where the settlor purposes to make a stranger the trustee, then, to ascertain whether a valid trust has been created or not, we must take the following distinctions: If the subject of the trust be a legal interest and one capable of legal transmutation, as land, or chattels, &c., the trust is not perfectly created unless the legal interest be actually vested in the trustee."

---

\* Cloud *v.* Calhoun, 10 Richardson's Equity, 362.

† Lewin on Trusts, 152; King *v.* Donnelly, 5 Paige, 46.      ‡ Ib.

§ Page 55, 4th edition, 1861.

To these positions numerous authorities are cited by the learned author.

In the case before us the settlor contemplated no further act to give completion to the deed. It was not an intention simply to create a trust. He had done all that was needed. With his wife he signed and sealed the deed. With her he acknowledged it before the proper officers, and himself caused it to be recorded in the appropriate office. He retained it in his own possession, but where it was equally under her dominion. He declared openly and repeatedly to her, and to her brothers and sisters, that it was a completed provision for her, and that she was perfectly protected by it. He intended what he had done to be final and binding upon him. Using the name of his friend as trustee he made the placing the deed upon record and keeping the same under the control of his wife as well as himself, a delivery to the trustee for the account of all concerned,[*] or he intended to make himself a trustee by actions final and binding upon himself.

Adopting the principles laid down by Mr. Lewin, the plaintiff has established her case.

Mr. Hill, in his work on Trusts, lays down the rule in these words, in speaking of a voluntary disposition in trust:

"The fact that the deed remains in the possession of the party by whom it is executed, and that it is not acted upon, or is even subsequently destroyed, will not affect its validity, unless there are some other circumstances connected with the transaction which would render it inequitable to enforce its performance."

To this he cites many authorities. After quoting many other cases, the author adds:[†]

"It would seem to follow from the foregoing decisions that the court will in no case interfere to enforce the performance of a voluntary trust against its author if the legal interest in the property be not transferred or acquired as part of the transaction creating the trust. The doctrine of

---

[*] Cloud v. Calhoun, 10 Richardson's Equity, 362.          [†] Page 136.

the court however does not, in fact, appear to be so confined. If a formal declaration of trust be made by the legal owner of the property declaring himself in terms the trustee of that property for a volunteer, or directing that it shall be held in trust for the volunteer, the court will consider such a declaration as a trust actually created and will act upon it as such."

The author says again:

" It will be seen that it is difficult to define with accuracy the law affecting this subject. The writer conceives that he is warranted in stating the following propositions to be the result of the several decisions: 1. Where the author of a trust is possessed of the legal interest in the property, a clear declaration of trust contained in or accompanying a deed or act which passes the legal estate will create a perfect executed trust, and will be established against its author and all subsequent volunteers claiming under him. 2. A clear declaration or direction by a party that the property shall be held in trust for the objects of his bounty, though unaccompanied by a deed or other act divesting himself of the legal estate, is an executed trust, and will be enforced against the party himself, or representatives, or next of kin after his death."

Upon the principles laid down by this author the plaintiff's case is made out.

It will be necessary to refer to a few only of the American authorities.

In *Bunn* v. *Winthrop*,\* which was the case of a voluntary trust created in certain real estate in the city of New York, Chancellor Kent says:

" The instrument is good as a voluntary settlement, though retained by the grantor in his possession until his death. There was no act of his at the time or subsequent to the execution of the deed which denoted an intention contrary to the face of the deed. The cases of *Clavering* v. *Clavering*,†

---

\* 1 Johnson's Chancery, 329.

† 2 Vernon, 473 ; 1 Brown's Parliamentary Cases, 122.

of *Boughton* v. *Boughton*,* and of *Johnson* v. *Boyfield*,† I had occasion lately to consider in the case of *Souerbye* v. *Arden*, and they will be found to be authorities in favor of the validity and operation of deeds of settlement, though retained by the grantor under circumstances much less favorable to their effect than the one now under consideration."

In *Souverbye* v. *Arden*,‡ which was a bill against the father to enforce a voluntary settlement of real estate upon the daughter, made by the father and by the mother, then deceased, the same learned judge says:

"If we recur to the adjudged cases and the acknowledged rules of law on this subject, they will be found in favor of the valid operation of this deed, whether the actual delivery was to the plaintiff or to her mother (the mother being one of the grantors). This is much stronger, and attended with more circumstances of a due delivery, than *Shelton's Case*.§ In that case a deed was sealed in the presence of the grantee and others, and was read, but not delivered, nor did the grantee take it, but it was left behind in the same place, and yet in the opinion of all the justices it was a good grant; for the parties came together for that purpose, and performed all that was requisite for perfecting it except an actual delivery; being left behind, and not countermanded, it was held to be a delivery in law. In the ancient authorities, and at a time when the execution of deeds was subjected to great formality and strictness, it was admitted that if A. execute a deed to B., and deliver it to C., though he does not say to the use of B., yet it is a good delivery to B., if he accepts of it, and it shall be intended that C. took the deed for him as his servant. . . . A voluntary settlement, fairly made, is always binding in equity upon the grantor, unless there be clear and decisive proof that he never parted, nor intended to part, with the possession of the deed; and even if he retains it, the weight of authority is decidedly in favor of its validity, unless there be other circumstances beside the mere

---

\* 1 Atkyns, 625.                          † 1 Vesey, Jr. 814.
‡ 1 Johnson's Chancery, 255.               § Croke Eliz. 7.

fact of his retaining it, to show it was not intended to be absolute. This will appear from an examination of a few of the strongest cases on each side of the question."

He then goes into an examination of the decided cases, for which it is only necessary to refer to the case itself.*

The defence rests upon the alleged non-delivery by Mr. Adams of the deed of August 13th, 1861, to Mrs. Adams, or for her benefit. We have referred at length to the authorities which show that as matter of law the deed was sufficiently delivered, and that it is the duty of the court to establish the trust.

We think that the decree of the court below was well made, and that it should be

AFFIRMED.

---

* That the deed in question created a trust, executed and complete, which will be enforced by the courts; see, also, Neves *v.* Scott, 9 Howard, 196; Same case, 13 Id. 271.