## AMBROSIUS v. AMBROSIUS.

(Circuit Court of Appeals, Second Circuit. January 9, 1917.)

### No. 52.

1. TRUSTS ⊜═371(8)—PLEADING—PRAYER—GENERAL RELIEF.

Where a bill to recover personal property was framed on the theory that a trust had been declared therein by complainant's father, but contained a prayer for general relief, complainant can recover, if she establishes that she was the original owner of the property.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 598; Dec. Dig. ⊜═371(8).]

2. GIFTS ⊜═22—GIFTS INTER VIVOS—DELIVERY—NECESSITY.

A gift by a father to his daughter of certain securities, which was only evidenced by a statement prepared by him and kept with a list of securities, a copy being delivered to his mother in a sealed envelope, to be opened only after his death, is ineffectual for want of delivery, and equity will not interfere to perfect it.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. § 37; Dec. Dig. ⊜═22.]

3. TRUSTS ⊜═37½—EXPRESS TRUST—DECLARATION—INCONSISTENT ACTS.

Where one not a lawyer signed a statement, on a list of securities which he purchased with his own funds, that he held the securities as trustee for his daughter during his lifetime, but thereafter he dealt with the securities as his own, selling some and pledging others, his acts indicate that he did not intend by his declaration to make himself trustee in the legal sense, but only to transfer to his daughter such securities as he might own at his death, and such intention cannot be enforced.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 53; Dec. Dig. ⊜═37½.]

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by Marie Marjorie Ambrosius, an infant, by Kate Ambrosius, her next friend, against Iva H. Ambrosius, as administratrix of the

goods, chattels, and credits of Herman Z. Ambrosius, deceased. From a decree dismissing the bill, complainant appeals. Affirmed.

Krauthoff, Harmon & Mathewson, of New York City (E. J. Patterson and Carroll G. Walter, both of New York City, of counsel), for appellant.

Davis, Symmes & Schreiber, of New York City (David T. Davis and Robert C. Ryder, both of New York City, of counsel), for appellee.

Before COXE, WARD, and HOUGH, Circuit Judges.

WARD, Circuit Judge. September 26, 1905, Herman Z. Ambrosius, an employé of Speyer & Co., bankers of this city, having then an only child by his first wife, a daughter eight years of age, living with his mother in Chicago, drew up on a sheet of paper a list of securities, which he headed with the words, "List of securities held by L. J. Salomon in Speyer & Co.'s vault in envelope marked 'Property of H. Z. Ambrosius,'" and concluded with the words:

"All these foregoing securities belong to my daughter Marie Marjorie Ambrosius, and are held by me in trust for her during my lifetime.
"New York, September 26, 1905.          H. Z. Ambrosius."

About a month later he visited his mother in Chicago and delivered to her a press copy of this sheet in a sealed envelope, telling her to keep it carefully, as it contained a paper of value to Marie, but not to tell her about it, as he did not want her to get the idea she had money. His mother put the sealed envelope in her box at a safe deposit company, to remain unopened in accordance with his directions until after his death. Other than this there was no communication to any one of what he had done. The securities stood in his own name, or in the name of third parties, indorsed by them in blank, and he sold some of them, noting the fact and date of sale on the list and running a line through the entry.

September 10, 1907, he made another list, headed, "List of securities handed to L. J. Salomon for safe-keeping in Speyer & Co.'s vault, in envelope marked 'Property of H. Z. Ambrosius,' which securities belong to my daughter, Marie Marjorie Ambrosius, and are held by me in trust for her, during my lifetime," into which he carried most of the securities which were left on the first list and signed it September 10, 1907: "H. Z. Ambrosius. Witness: A. Lincoln Baer." Some of the securities on this list also he sold and struck off in the same way, and on some of them he borrowed money from the banks. On the back of each of these sheets were lists of other securities, some of which had been sold and crossed off in the same way as was done with those on the front of the sheets, and as to them the complainant makes no claim.

Ambrosius paid his mother at first $30 a week, and afterwards $50 a week, for the board and lodging of his daughter, and paid in addition for her schooling, medical expenses, etc. October 15, 1913, he died, leaving a second wife, whom he had married in 1904, and two children by her, him surviving. His mother then opened the envelope

given her containing the press copy of the paper of September 26, 1905, as drawn.

After his death there were found in his desk at Speyer & Co.'s an open envelope, marked "Property of H. Z. Ambrosius, August 29, 1912," containing the two lists before mentioned and a large number of the listed securities, together with other securities not mentioned in either list. There is no evidence that the securities were ever delivered to Salomon, or were ever in Speyer & Co.'s vault.

Judge Veeder dismissed the bill, on the ground that it was the decedent's intent to make a testamentary disposition, and that if he ever intended to make a trust he revoked it in his lifetime.

[1] While the bill proceeds directly and expressly upon the ground of a trust declared by Ambrosius in his lifetime, it asks for general relief, and, as the decedent did state that the securities belonged to the complainant, she was entitled to recover under the bill on the ground of her antecedent ownership, if she could prove it. But she did not prove it. The decedent's father died in Chicago in 1894, leaving nothing but $1,000 coming from his lodge. His mother supported herself by dressmaking. There was positive proof that most of the securities mentioned in the papers of 1905 and 1907 were brought by Ambrosius with his own money, and there is not a vestige of evidence that the complainant had any money or property whatever. Therefore the claim that the securities belonged to her before the papers of 1905 and 1907 were signed is wholly without support.

In this respect the case differs from Govin v. De Miranda, 140 N. Y. 474, 35 N. E. 626, on which the complainant so much relies. In it there was no evidence of any relationship between the deceased and the plaintiffs, so that the court held that, in view of his express statement that the securities belonged to them it was bound to assume that they came to them by purchase or gift from some one. If there had been any evidence that the bonds had been purchased by the decedent with his own money, the decision would unquestionably have been different. This was evidently the opinion of the General Term upon the appeal from a judgment directed by the court in favor of the plaintiffs in a second suit to recover the interest paid on the bonds in question during the decedent's lifetime. Govin v. De Miranda, 79 Hun, 329, 29 N. Y. Supp. 347. In that case the court directed a verdict in favor of the plaintiffs on the ground that the ownership of the bonds had become res judicata in the first action, and evidence that the decedent bought the bonds with his own money was not admissible in the second action to contradict that adjudication.

[2] Of course, if Ambrosius intended a present gift to his daughter, it was quite ineffectual for want of delivery, and equity will not intervene to perfect it.

[3] Therefore the question is: Can the complainant recover upon the strength of a declaration of trust made by the decedent in her favor? What we have to determine is the intention of the decedent. If the language in the paper of September 26, 1905, constituted him a trustee for the complainant as to the securities therein mentioned, we think that the delivery of a copy of it in a sealed envelope to his

mother to keep for the complainant was sufficient evidence to support the trust. This envelope was opened after the death of Ambrosius, and of course throws no light upon the meaning of what he wrote. We have to determine his intention, both from what he wrote in 1905, and what he did during the eight years thereafter, down to the time of his death.

Ambrosius was a layman, and may have been unaware of the legal meaning and effect of the expression he used as to holding the securities in trust for his daughter. Between what he wrote and what he did his intention is not clear. At least, we must consider what he did in the premises, as well as what he wrote. He is to be presumed to have been an honest man, and very evidently was a loving father. There being no evidence that he ever kept any account with the complainant of the income of the securities, kept them in his own name, used them for his own purposes just as he did all other securities he had, it is impossible to believe that he intended by what he wrote to divest himself of ownership. His conduct during this long period is absolutely inconsistent with the character of a trustee. We cannot believe that he would have acted with such bad faith if he had supposed himself to be a trustee for his daughter in the legal acceptation of that term. We think he intended that only such of the securities as should be in his possession at the time of his death should then go to the complainant.

Another case arising out of De Miranda's estate is nearer the present case. Govin v. De Miranda, 76 Hun, 414, 27 N. Y. Supp. 1049. The decedent signed and acknowledged before a notary public a paper as follows:

"State and City of New York, May 25th, 1881.

"For the sum of $1 to me in hand paid, the receipt of which is hereby acknowledged, and for certain other valuable considerations, I do hereby transfer, set over, and deliver to the young man known as Felix Govin Dias, a native of Matanzas, Island of Cuba, now living at No. 147 East 39th street in the city of New York, two certificates of $10,000 each ($20,000) of the U. S. 4½ per cent. loan under the act of Congress entitled 'An act to authorize the refunding of the national debt approved July 14, 1870, issued one Jan. 18, 1878, Letter A 13,235, and the other one issued May 17, 1877, Letter A 10,642. Said certificates will be retained in my custody for the present as trustee for the said Felix Govin Diaz.          Felix Govin y Rute. [L. S.],

"Trustee of two certificates each one of ten thousand dollars."

Notwithstanding the expression that he held the securities in trust for the plaintiffs, the court decided that, as the decedent kept the paper in his possession and sold the bonds, it was clear he did not intend to divest himself of title.

Some distinctions in the cases cited may be briefly pointed out. In Locke v. Farmers' Loan & Trust Co., 140 N. Y. 135, 35 N. E. 578, the decedent declared a trust of which he notified the beneficiaries and which he actually performed for their benefit for several years before his death. In Van Cott v. Prentice, 104 N. Y. 45, 10 N. E. 257, a complete and effective trust was drawn up in writing and delivered in a sealed envelope to the trustee. In Matter of King, 115 App. Div. 751, 100 N. Y. Supp. 1089, affirmed 188 N. Y. 626, 81 N. E. 1167, the deed of trust and the securities themselves had been de-

livered by the decedent to the trustee. In Linton v. Brown (C. C.) 20 Fed. 455, a deed of trust had been delivered by the decedent to the beneficiary and by her delivered to a third party. In Fowler v. Gowing (C. C.) 152 Fed. 801, and 165 Fed. 891, 91 C. C. A. 569, the stock in question was purchased by the father as trustee with his children's money and their ownership was not disputed.

The decree is affirmed.

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes