## ELLIOTT v. GORDON.
### No. 938.

Circuit Court of Appeals, Tenth Circuit.
April 4, 1934.

Thurman L. McCormick, of Kansas City, Mo. (Andrew R. Lyon, of Kansas City, Mo., on the brief), for appellant.

F. W. Boss, of Columbus, Kan. (Marc. G. Boss, of Columbus, Kan., on the brief), for appellee.

Before LEWIS and BRATTON, Circuit Judges, and VAUGHT, District Judge.

BRATTON, Circuit Judge.

The subject-matter of this litigation is five Liberty bonds of $1,000 each. George A. Howerton purchased them with his own money in 1923. The purchase was made in the usual manner. Howerton's wife died in 1924. Appellant attended her during the last months of her illness and was paid for the service. The two women were sisters.

Following the death of his wife and until 1929, Howerton spent much of his time in the home of appellant in Kansas City, Mo., but retained his legal residence in Kansas. He paid for his room and board and, in addition, contributed monthly to appellant's support. That apparently was done in response to a request made by his wife during her fatal illness that he look after her sister.

In 1924 Howerton placed the bonds in question in an unsealed envelope, wrote the following indorsement on it, and deposited the envelope in his safety deposit box in Fidelity National Bank & Trust Company in Kansas City, in which he kept other Liberty bonds and other securities:

"August, 1924

"These five $1,000.00 Fourth Liberty Bonds belong to Mrs. Kate Elliott, 3233 Tracy Ave Kan City Mo and are deposited in my box for safe keeping.

"G. A. Howerton

"This Pkg $5,000.00 Fourth Lib Bonds Belong to Mrs. Kate Elliott 3233 Tracy Ave Kansas City Missouri"

The bonds remained there until they were removed in the manner hereinafter detailed. Appellant never had possession, custody, or control of them.

Howerton suffered a stroke of apoplexy in September, 1929, which rendered him mentally and physically incompetent. Appellee was appointed guardian of his person and estate by the probate court of Cherokee county, Kan., on November 2, 1929, and about a month thereafter he was appointed ancillary guardian by the probate court of Jackson county, Mo. The latter appointment was necessitated by the fact that some of the property belonging to the estate was situate in Missouri. Howerton remained incompetent from the date of the stroke until his death in February, 1931. Appellee was appointed administrator of the estate.

Within a day or two after appellee was appointed ancillary guardian in Missouri, he took all of the stocks, bonds, and securities, including the bonds in question, also some securities admittedly the property of appellant, out of the safety deposit box and removed them to Columbus, Kan. Appellant and others were present when that was done.

After Howerton's death, appellant asserted ownership in the bonds; that he held them in trust for her; that appellee had covered them into the estate and refused to account for them. She sought possession of the bonds and judgment for the amount of

interest collected on them. Appellee denied the ownership and trust and alleged that the bonds were the property of Howerton at the time of his death and that appellee had title to them afterwards.

The court found specifically that Howerton did not intend to make appellant a then present gift or transfer of either the equitable or legal title to the bonds; that he did not intend at any time to create a trust in them nor to constitute himself as trustee to hold them for her; and that she had no knowledge of them being in an envelope bearing the indorsement referred to until after his death. A decree was entered denying appellant the desired relief and the case came here on appeal.

Appellant interposed a motion to strike from the record a part of the contents of the statement of the evidence. Appellee countered with a motion to strike that motion from the files. We pass both motions and proceed to consider the case on its merits.

■ In order to constitute an express trust of the kind asserted here, there must be clear, explicit, and definite language to that effect or circumstances which show with reasonable certainty that the settlor intended to create such an estate. The legal owner of personal property is prima facie entitled to its beneficial use and enjoyment. He cannot be changed from owner to trustee for the use and benefit of another unless the facts and circumstances indicate clearly and unequivocally that he intended thus to change his position. No particular form of words is required. Use of the word "trust" or "trustee" is unnecessary. There is no magic in either of those words. But the donor must employ language which shows unequivocally an intention on his part to create a trust in a third person or to declare one in himself. That intention carried into effect means a present gift of the equitable estate with reservation of the legal title. It means a gift in præsenti stamped with the character of a trust. Such a gift may be effected by either spoken words or writing or both, but they must be definite, explicit, and unequivocal. Eschen v. Steers (C. C. A.) 10 F.(2d) 739; Heiden v. Cremin (C. C. A.) 66 F.(2d) 943; Adamson v. Black Rock P. & I. Co. (C. C. A.) 297 F. 905; Allen v. Hendrick, 104 Or. 202, 206 P. 733; Christopher v. Davis (Tex. Civ. App.) 284 S. W. 253; Cazallis v. Ingraham, 119 Me. 240, 110 A. 359; Wadd v. Hazelton, 137 N. Y. 215, 33 N. E. 143, 21 L. R. A. 693, 33 Am. St. Rep. 707.

■ The writing on the envelope, without explanation of the circumstances attending its indictment and unaided by the declarations and acts of the parties, is insufficient to constitute an enforceable trust. A cursory examination of the phraseology discloses plainly that it does not purport to vest the equitable title in appellant, nor to declare Howerton trustee for her benefit. It does not contain words of conveyance. Indeed, it does not even indicate that he owned the property. The language merely purports to recite the fact that the bonds belong to appellant and that they were placed in the safety deposit box for safe-keeping. That implies that she caused or permitted them to be placed there for such purpose. There is a total absence of suggestion that title was then or thereby conveyed to her and that he had possession of them in trust for her benefit. There is a like absence of suggestion that his position was changed from that of owner to that of trustee. It is believed that reasonable minds could not differ substantially on that meaning of the language without support aliunde the instrument.

Apparently recognizing the inadequacy of the writing to constitute a trust, appellant sought to supplement it with her own testimony and that of two other witnesses—Mrs. Hudson and Holliday. She testified that in August, 1924, Howerton showed her an envelope, said it contained the bonds, and told her they were hers; that she did not see them; that he merely told her they were in the envelope then exhibited to her and that she believed him; that the envelope was a different one from that produced at the trial. Mrs. Hudson testified that on one occasion in October, 1930, while she was acting as nurse for Howerton, she accompanied him to appellant's home; that she there heard appellant ask him if he still had her bonds "here in Kansas City"; that he replied he had them, was keeping them, and looking after them for her. Holliday, a nephew of appellant, testified that in August, 1928, he and Howerton went to the Fidelity Bank; that while on the way Howerton said, "I have something down here at the Fidelity Bank I want to show you. * * * I want you to know about in case anything should happen to me"; that he secured the safety deposit box, took some bonds from it, and said, "Here is a package of five $1,000.00 bonds that belongs to Mrs. Kate Elliott, * * * these belong to your Aunt Kate. * * * I am taking care of this along with these other stocks and bonds because she is not very fa-

miliar with business transactions"; that Howerton further stated that appellant knew the package was there; that the envelope shown him bore a writing stating in substance that it contained five $1,000 bonds which belonged to appellant. This is the testimony on which appellant relies to support the writing.

Ernest H. Howerton, a nephew of George A. Howerton, testified in behalf of appellee. He stated that he lived with his uncle two years following his mother's death; that they bore an intimate relationship each to the other; that in August, 1928, he spent the night with his uncle at the home of appellant; that on the following morning the two of them went to the bank; that his uncle showed him the envelope in question with the quoted language inscribed thereon and stated that the bonds were to take care of appellant at his death if their relationship remained unchanged and that no one knew about them; that in September, 1929, he went to Columbus, Kan., at his uncle's request; that on that occasion his uncle said he and appellant had ˌa serious misunderstanding and that he did not then intend for her to have the bonds; that he had settled in full with her and was through. Obviously, the testimony of Holliday and that of Howerton purported to detail conflicting statements, said to have been made by George A. Howerton; one that the bonds belonged to appellant, that he was keeping them for her, and that she knew about them; the other that they would become her property at his death if no change occurred in their relationship and that no one knew about them.

The record is replete with significant circumstances which are highly persuasive and very helpful in resolving the decisive question in a case of this kind. On the day following his appointment as ancillary guardian in Jackson county, Mo., appellee took possession of the entire contents of the safety deposit box, including certain securities which admittedly belonged to appellant. She was present and made no claim to the Liberty bonds involved. The next day he went to her home and asked her to furnish him a list of her securities formerly in the box. She gave him the list, using a memorandum for that purpose. He wrote the list as she dictated it from her memorandum. The list thus furnished coincided perfectly with the securities taken from the box except that no mention was made of the Liberty bonds. When asked on the witness stand why she failed to include the Liberty bonds, she merely replied that she thought they would be honest with her. About two months after appellee took the papers from the deposit box, appellant wrote him asking when her securities would be returned. He replied that those belonging to her and likewise those belonging to her sister were being forwarded to the bank in Kansas City and that the two of them could call there, sign a receipt, and secure their property. Appellant went to the bank, signed the receipt purporting to enumerate all of her property, but again asserted no claim to the Liberty bonds nor made any reference to the fact that they had been omitted. Although Howerton lived more than two years after the bonds were removed from the bank, she did not assert a claim to them nor mention them to appellee until after Howerton died. She then wrote the probate judge at Columbus, Kan., and subsequently conferred with him respecting the property. In the letter and in the conference she referred to the bonds in the singular, using the pronoun "it" in each instance.

Turning now to the conversation to which Mrs. Hudson testified, it is said to have taken place in October, 1930. According to the witness, appellant asked Howerton if he still had her bonds there in Kansas City. He replied that he had them there; that he was keeping them and looking after them for her. That testimony is met with significant circumstances. Appellee had taken possession of the bonds and removed them from Kansas City to Columbus about nine months prior to that time. Appellant knew that fact; she knew that they were not in Howerton's possession and likewise that they were not in Kansas City. Too, Howerton had been virtually unable to talk since his unfortunate stroke. He could speak with great difficulty and was able to say only one or two words at a time. He sometimes said one thing when obviously meaning another.

A fact of potency and persuasion is that throughout the five years from the time the bonds were placed in the envelope and the writing inscribed thereon until Howerton was stricken, he clipped the interest coupons and converted the avails thereof to his own use. While that is not fatal to the validity of a trust, it is strongly persuasive that he did not intend to make and did not understand that he had made a present gift of the bonds with a trust attached and that he held them in trust for her. The act is inconsistent with the character of a trustee. Ambrosius v. Ambrosius (C. C. A.) 239 F. 473; Ward v. Geary, 114 Neb. 50, 205 N. W. 1000; Geoghegan v. Smith, 133 Md. 535, 105

A. 864; Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531; Govin v. De Miranda, 76 Hun, 414, 27 N. Y. S. 1049.

The record fails to show that appellant made demand for the interest accruing during that period. That is a circumstance indicating that she did not understand and believe that the bonds belonged to her. Obviously, the facts and circumstances thus canvassed with the inferences reasonably to be drawn therefrom, presented an issue of fact for the determination of the trial court. That issue was resolved against appellant. We review the facts in an equity case, but the findings of the chancellor will not be overthrown unless a serious mistake occurred in the consideration of the evidence. That is a doctrine to which this court is definitely committed. Youngblood v. Magnolia Petr. Co. (C. C. A.) 35 F.(2d) 578; Jackson v. Jackson (C. C. A.) 67 F.(2d) 719. No such error appears.

An imperfect or defective gift or an attempted testamentary disposition of personal property not in the manner authorized by law cannot be converted into an enforceable trust. Eschen v. Steers, supra; Trubey v. Pease, 240 Ill. 513, 88 N. E. 1005, 16 Ann. Cas. 370; In re Ashman's Estate, 223 Pa. 543, 72 A. 899.

Appellant challenges the admissibility of statements made by Howerton after August, 1924, that she knew nothing about the bonds and that he intended for her to have them at his death if their relationship was unchanged at that time. It is asserted that such declarations were not admissible because they were in derogation of her title. It is well settled that once a trust is established, declarations of the donor thereafter made in derogation of it are not admissible because the estate is irrevocable and it is immaterial what the donor may say after it is created. But the challenged testimony was not offered to overthrow a trust estate. It was not in derogation of appellant's title. That was not the purpose of the testimony. Its purpose was to show that Howerton did not intend to make her a then present gift of the equitable title to the property; that she never had such title. That was the issue in the case; not that a trust had been created and subsequently terminated. The declarations were admissible to show Howerton's intention and his interpretation of what had been done. Adams v. Hagerott (C. C. A.) 34 F.(2d) 899; Stoehr v. Miller (C. C. A.) 296 F. 414:

Appellant also assails the admissibility of the testimony that Ernest H. Howerton told appellee and Minnie Grant of the statements made to him by George A. Howerton. It is charged that the testimony was hearsay and irrelevant. It is a well recognized presumption that in the trial of an equity case, testimony improperly admitted was disregarded. It does not appear that the court took the testimony into consideration in deciding the case. Apart from it the case was decided correctly. The contention is untenable. Jonah v. Armstrong (C. C. A.) 52 F.(2d) 343.

We conclude that the decree was right. It is therefore affirmed.