**BINGEN et ux. v. FIRST TRUST CO. OF ST. PAUL et al.**

No. 2933.

District Court, D. Minnesota, Third Division.

May 2, 1938.

Orr, Stark & Kidder, of St. Paul, Minn., for plaintiffs.

Harvey O. Sargeant, of St. Paul, Minn., for defendants.

Otis, Faricy & Burger, of St. Paul, Minn., for Children's Service, Inc.

Fred A. Kueppers, of St. Paul, Minn., for St. Joseph Orphans Home.

Doyle & Allard, of St. Paul, Minn., for Little Sisters of the Poor.

SULLIVAN, District Judge.

This is a suit in equity brought by the plaintiffs, Birger Bingen and Elisa Bingen, his wife, against the First Trust Company of St. Paul and Walter H. Honebrink, as the executors of the Estate of Christian A. Westerbaum, deceased, wherein the plaintiffs seek to be adjudged the owners of the mortgages specifically described and set out in the bill of complaint herein, for a recovery of said mortgages from the defendants, and for an accounting by the defendants as representatives of said deceased's estate.

The facts, as the same appear from the evidence, are as follows:

Christian A. Westerbaum was born in Norway and came to the United States in 1880, making his home in St. Paul, Minnesota, for many years. For a number of years he was rather actively engaged in the loaning of his own money, taking as security therefor real estate mortgages. He was married, but had no children. His wife died in the fall of the year 1933, and he died in September, 1936.

The plaintiff, Birger Bingen, was a nephew of Mr. Westerbaum. The deceased was a brother of plaintiff Birger Bingen's mother, who predeceased her brother, Mr. Westerbaum. Birger Bingen, his brother and two sisters, were the only near relatives of the deceased, and all of these persons resided in Norway, and with the exception of Birger Bingen, it appears that none of said persons ever lived in the United States. Birger Bingen came to the United States in the year 1909, and was employed, with some interruptions, in New York City from 1909 down to December, 1932, when he returned to Norway, and since that date he has continuously made his home in Norway. Birger Bingen and the deceased, during his lifetime, carried on an irregular correspondence, each hearing from the other occasionally.

On December 29, 1930, Christian A. Westerbaum wrote a letter in the Norwegian language to Birger Bingen, which letter is identified in this case as Plaintiffs' Exhibit A. This letter was received in Norway by Birger Bingen in the early part of January, 1933, and the agreed translation to the English language is as follows:

"St. Paul Minn Dec 29—1930

"Dear Birger

"New York City

"We have now decided to give you and wife 17 mortgages to an amount of about $39,250.00, all mortgages read in my name— but they are transferred over to you. I shall do my best to have mortgages cashed but that will probably take a longer time on account of poor times and no money amongst people. I shall hold all the papers here until later—in case something should happen that I can look after it—then I will do it without legal costs and probably without loss. (Schedule of mortgages set out)

"[Signed.]   C. A. Westerbaum."

It is plaintiff's contention that the letter, Exhibit A, was written December 29, 1932. This is the first of the letters or communications from Mr. Westerbaum to Mr. Bingen received in evidence.

On October 19, 1933, another letter was received by Mr. Bingen from Mr. Westerbaum, and in that letter Mr. Westerbaum told of his wife's death, and in part stated: "I have thought to arrange what I leave

behind so that they will come to those I wish shall have what I have."

The next letter written by Mr. Westerbaum bears the date December 9, 1933, and in part he stated: "I have first mortgages for at least $100,000 out on interest."

On February 14, 1934, Mr. Westerbaum wrote his nephew in part as follows: "I have arranged all in best way in case I should die suddenly. My bank book is such that money can be taken out by you so that the Probate Court cannot prevent it."

On October 26, 1934, Mr. Westerbaum wrote: "It is too bad that you cannot come over here and take over my business."

In January, 1935, he wrote his nephew, Birger: "I am now working ardently with turning every thing I have into money.", then went on and referred to certain articles of jewelry of his deceased wife, and a $5,000 bank draft which he was going to send to his nephew.

On February 22, ——, he wrote Mr. Bingen that, due to the severe cold weather, he had not been out of his house, and consequently did not attend to sending the draft for $5,000 or the jewelry referred to in his preceding letter, and said that at that time he was sending the jewelry by registered mail.

On March 23, 1935, Birger Bingen acknowledged receipt of the draft for $5,000 and the jewelry. It is probable that the letter written by Mr. Westerbaum to Birger Bingen, bearing date February 22, ——, was written in the year 1935.

In all of the letters exchanged, subsequent to the date of the receipt of Exhibit A, between Mr. Westerbaum and Mr. Bingen, there was no further mention or reference to the mortgages referred to in Exhibit A. Mr. Bingen testified that he never received any assignment of the mortgages referred to in that exhibit, nor did he receive any remittances on interest or on principal covered by any of said mortgages.

From the testimony in the case it appears that no demand for the payment of any of the interest or any part of the principal on the mortgages referred to in Exhibit A was ever made by Birger Bingen during the lifetime of Mr. Westerbaum, and that no demand ever was made upon Mr. Westerbaum during his lifetime by Mr. Bingen for an accounting by reason of any collections made on the mortgages referred to in Exhibit A.

Mr. Westerbaum, subsequent to the date of said Exhibit A, made five wills, the last of these wills being drawn in July, 1936, and being the will now probated in Ramsey County, Minnesota.

Mr. Westerbaum had an account with the First National Bank of St. Paul for seven or eight years, and this account was carried in his own name. He carried no trust account in that bank. After the death of Mr. Westerbaum, account books were found in his desk, the entries therein including reference to many of the mortgages referred to in Exhibit A. These accounts were kept in the handwriting of Mr. Westerbaum and ran down through the year 1935. These books disclose no items of the accounts in trust for the plaintiffs or any other persons. Many blank assignments of mortgages were found in Mr. Westerbaum's desk after his death. These assignments were unrecorded. No assignments of any mortgages were found running to the plaintiffs, or either of them.

Nine of the seventeen mortgages referred to in Exhibit A were satisfied by Mr. Westerbaum during his lifetime, and these satisfactions were duly recorded in the Office of the Register of Deeds for Ramsey County, Minnesota. The satisfactions bear divers dates from March 7, 1934, to January 21, 1936. Two of said mortgages were foreclosed by Mr. Westerbaum; Sheriff's certificates were issued to him, and were by him assigned to persons other than the plaintiffs. Written assignments of two of the mortgages referred to in Exhibit A, the Schaettgen and Swandollar mortgages, dated January 31, 1936, and May 26, 1936, with the name of the assignee in blank, were found among the books and records of the deceased. The inventory in the estate of Mr. Westerbaum discloses total assets in the sum of $76,575.85, comprising real estate mortgage items of the value of $42,029.05, bonds valued at $12,873.16, cash about $14,000, and real estate valued at $6,500.

The Court is confronted with the following questions:

(a) Was it the intention of Mr. Westerbaum to make a present gift in trust of the mortgages set out in Exhibit A to Birger Bingen and Elisa Bingen, his wife?

(b) Was sufficient said and done by Mr. Westerbaum to create a gift of the mortgages set out and referred to in Exhibit A

in trust in Birger Bingen and Elisa Bingen, his wife?

1. In order to constitute a trust, the language used in creating the same must be explicit, definite and certain, or the surrounding circumstances must show 'with reasonable certainty that a trust was intended to be created. Beaver v. Beaver, 117 N. Y. 421–428, 22 N.E. 940, 6 L.R.A. 403, 15 Am.St.Rep. 531; O'Neil v. Greenwood, 106 Mich. 572, 64 N.W. 511; Elliott v. Gordon, 10 Cir., 70 F.2d 9; Eschen v. Steers, 8 Cir., 10 F.2d 739.

The plaintiffs contend that the letter, Exhibit A, constitutes an effective and valid declaration of trust. The primary question which the court is called upon to answer is as to whether or not the writing, Exhibit A, of and in itself, is effective as a declaration of trust. That is, is the same in such explicit, definite and certain language that the court may, without considering the surrounding circumstances, say positively and without any hesitancy, that a valid trust was created.

The legal owner of personal property is entitled to its use, possession and beneficial enjoyment, and he cannot change himself from an owner, with all the attributes of possession and dominion, to that of a trustee, who merely holds the property for the beneficial enjoyment of another, unless the writing and the facts and circumstances clearly indicate without equivocation that he intended to make such change in position and relation to the personal property.

The words "trust" or "trustee" are not required to be used in a declaration of trust. It is not necessary that the language used in a declaration of a valid trust be that of a lawyer conversant with trusts, and the language need not be technical. It may be that of a layman, if it properly and sufficiently sets out the intention of the settlor.

In Wadd v. Hazleton, 137 N.Y. 215, 33 N.E. 143, 21 L.R.A. 693, 33 Am.St.Rep. 707, it is stated (page 144): "While it is true that no particular form of words is necessary to create a trust of this nature, and while it may be created by parol or in writing, and may be implied from the acts or words of the person creating it, yet it is also true that there must be evidence of such acts done or words used on the part of the creator of the alleged trust that the

intention to create it arises as a necessary inference therefrom, and is unequivocal. The implication arising from the evidence must be that the person holds the property as trustee for another. The acts must be of that character which will admit of no other interpretation than that such legal rights as the settlor retains are held by him as trustee for the donee. The settlor must either transfer the property to a trustee, or declare that he holds it himself in trust. An intention to give, evidenced by a writing, may be most satisfactorily established, and yet the intended gift may fail because no delivery is proved. And where an intention to give absolutely is evidenced by a writing, which fails because of its nondelivery, the court will not and cannot give effect to an intended absolute gift by construing it to be a declaration of trust, and valid, therefore, without a delivery."

To the same effect: Allen v. Hendrick, 104 Or. 202, 206 P. 733.

2. Do the words of the letter, Exhibit A, show with reasonable certainty that the settlor intended to establish a trust?

Mr. Westerbaum wrote his nephew that he had decided to give the plaintiffs seventeen mortgages, which are enumerated in a schedule attached to the letter. This statement on the part of Mr. Westerbaum is nothing more than an expression of his determination, of the decision which he had reached—a mental conception. The language is not sufficient to constitute a gift, nor is it sufficient as a declaration of trust. Then he proceeded further and stated: "They are transferred over to you." The evidence in this case is that the mortgages were never transferred by any formal paper or assignment; that is, the legal title to the mortgages never passed to the plaintiffs. No formal instrument was executed in connection with the transfer or assignment of the mortgages. Mr. Westerbaum further stated: "I will do my best to have the mortgages cashed * * *". This may constitute a statement of his powers or duties as a trustee, or it may, on the other hand, be a statement of the right of control and ownership of the mortgages which Mr. Westerbaum intended to retain and to exercise. Then in conclusion, he wrote: "I shall hold all papers here until later—in case something should happen—that I can look after it, then I will do it without legal costs and probably without loss." Just what Mr. Westerbaum meant when he used this

language with reference to the mortgages is shrouded with doubt. He plainly indicates that he was to hold all of said mortgages. Did he, however, intend to retain the transfers or assignments of the mortgages referred to in that part of the letter immediately preceding, or did he intend that at some time in the future he would deliver and give to the plaintiffs assignments and written indicia of ownership of said mortgages? The whole paper must be construed together, and all of its provisions considered in their entirety. The court is unable to harmonize the different parts of the letter. Some provisions thereof are inconsistent with other parts, and the court is unable to determine just what the intentions of Mr. Westerbaum were at the time of writing this letter, from the language used therein.

■ A declaration of trust must not only show with reasonable certainty an intention on the part of the settlor to create a trust, but it must show also with reasonable certainty the subject, purpose and beneficiary of the trust. Noble v. Learned, 153 Cal. 245, 94 P. 1047.

■ The writing under consideration in itself does not meet the requirements of reasonable certainty in a declaration of trust. The court is not permitted to assume the intentions of Mr. Westerbaum at the time he wrote this letter. Processes of construction may not be resorted to for the purpose of reading into the paper an intention not therein expressed. Central Union Trust Co. of New York v. Trimble et al., 255 N.Y. 88, 174 N.E. 72.

■ The letter is an expression of intention on the part of Mr. Westerbaum to give to the plaintiffs the seventeen mortgages, or possibly the proceeds to be realized from the collection of such mortgages. The plaintiffs do not claim a gift inter vivos. Such a claim, if asserted, could not be sustained because of a failure of delivery of the mortgages or proper assignments thereof, to the plaintiffs and an incomplete gift, by reason of want of delivery, cannot be construed as a declaration of trust.

■ The writing in itself does not indicate an intention on the part of Mr. Westerbaum to become a trustee. Such intention, in the establishment of a valid trust, must be set out in the writing with reasonable certainty. This was not done, and in fact the implication to be drawn from the language of the letter is to the effect that Mr. Westerbaum held the property as an owner, and not as a trustee for the plaintiffs.

Mr. Lewin, in his work on Trusts, gives a rule which is quoted with apparent approval in Adams v. Adams, 21 Wall. 185, 192, 22 L.Ed. 504, viz.: "On a careful examination the rule appears to be, that whether there was a transmutation of possession or not, the trust will be supported, provided it was in the first instance perfectly created. * * * It is evident that a trust is not perfectly created where there is a mere intention or voluntary agreement to establish a trust, the settlor himself contemplating some further act for the purpose of giving it completion. * * * If the settlor propose to convert himself into a trustee, then the trust is perfectly created, and will be enforced so soon as the settlor has executed an express declaration of trust, intended to be final and binding upon him, and in this case it is immaterial whether the nature of the property be legal or equitable. * * * Where the settlor purposes to make a stranger the trustee, then, to ascertain whether a valid trust has been created or not, we must take the following distinctions: If the subject of the trust be a legal interest and one capable of legal transmutation, as land, or chattels, etc., the trust is not perfectly created unless the legal interest be actually vested in the trustee."

In Young v. Young, 80 N.Y. 422, 36 Am.Rep. 634, it is stated: "In cases of voluntary settlements or gifts, the court will not impute a trust where a trust was not in fact the thing contemplated."

See, also, Clay v. Layton, 134 Mich. 317, 96 N.W. 458.

The distinction pointed out between words importing a gift and words creating a trust received attention in the case of Richards v. Delbridge, 1874, L.R. 18 Eq. 11, where the court used the following language: "The one thing necessary to give validity to a declaration of trust—the indispensable thing—I take it to be, that the donor, or grantor, or whatever he may be called, should have absolutely parted with that interest which had been his up to the time of the declaration, should have effectually changed his right in that respect and put the property out of his power, at least in the way of interest. A man may transfer his property, without valuable consideration, in one of two ways: He may either do such acts as amount in law to a conveyance or assignment of the property, and

thus completely divest himself of the legal ownership, in which case the person who by those acts acquires the property takes it beneficially, or in trust, as the case may be; or the legal owner of property may, by one or other of the modes recognized as amounting to a valid declaration of trust, constitute himself a trustee, and, without an actual transfer of the legal title, may so deal with the property as to deprive himself of the beneficial ownership, and declare that he will hold it from that time forward in trust for the other person. It is true that he need not use the words, 'I declare myself a trustee', but he must do something that is equivalent to it, and use expressions which have that meaning; for, however anxious the court may be to carry out a man's intention, it is not at liberty to construe words otherwise than according to their proper meaning, * * * if the settlement is intended to be effectuated by one of the modes to which I have referred, the court will not give effect to it by applying another of those modes. If it is intended to take effect by transfer, the court will not hold the intended transfer to operate as a declaration of trust, for then every imperfect instrument would be made effectual by being converted into a perfect trust."

In the case of Heartly v. Nicholson, 1874, L.R. 19 Eq. 233, the court stated: "That no perfect transfer was at any time made by the testator appears to be perfectly clear; but it is not less clear to me that the testator intended to give, and on the 11th of February believed that he had given, the share in question to the plaintiff, his daughter. It is, however, established as unquestionable law that this court cannot by its authority render that gift perfect which the donor has left imperfect, and it will not and cannot convert an imperfect gift into a declaration of trust, merely on account of that imperfection. It is not necessary that the declaration of a trust be in terms explicit. But what I take the law to require is, that the donor should have evinced by acts which admit of no other interpretation, that he himself had ceased to be, and that some other person had become, the beneficial owner of the subject of the gift or transfer, and that such legal right to it, if any, as he retained was held by him in trust for the donee. The true distinction appears to me to be plain, and beyond dispute; for a man to make himself a trustee there must be an expression of intention to become a trustee, whereas

words of present gift show an intention to give over property to another, and not retain it in the donor's own hands for any purpose, fiduciary or otherwise."

The reasonable inference to be drawn from the language used in the letter, Exhibit A, is that Mr. Westerbaum contemplated some future act for the purpose of giving completion to the intention which he expressed therein; that is, whether he intended a gift or whether he intended to establish a trust for the plaintiffs, he had in mind something further that he desired to do. It may be that he intended the assignment of the legal interest and title in the mortgages to the plaintiffs, or it may be that he intended to collect all of said mortgages and to turn over to the plaintiffs the proceeds thereof. Whatever his intentions may have been with reference thereto, it is plain that the act of completing either a gift or the establishment of a trust was not done by Mr. Westerbaum.

3. The plaintiffs contend that evidence of the dealings and handling of the mortgages by Mr. Westerbaum subsequent to the writing, Exhibit A, are inadmissible, such objection being based upon the ground that such evidence is in derogation of the plaintiffs' title to such mortgages.

It is settled law that, once an irrevocable trust is established, the acts and declarations of the settlor with reference to the trust are inadmissible because the property in trust has passed beyond and without the control of the settlor. In other words, that evidence may not be received in derogation of the title of the cestui que trust. However, this rule does not apply where there is uncertainty in the declaration, or where the language used therein does not meet the requirements of the rule of reasonable certainty. Evidence of surrounding circumstances at the time of the writing and of subsequent handling by the alleged settlor of the corpus of the alleged trust is admissible in proof of the intention of Mr. Westerbaum at the time of the writing, and to show his interpretation of what he intended by the writing. Elliott v. Gordon, 10 Cir., 70 F.2d 9; Adams v. Hagerott, 8 Cir., 34 F.2d 899; Stoehr v. Miller, 2 Cir., 296 F. 414.

The intention, as set out in the writing, Plaintiffs' Exhibit A, of Mr. Westerbaum being uncertain and indefinite, the court in determining the same must necessarily re-

sort to and consider the subsequent declarations, actions and conduct of Mr. Westerbaum, in relation to the mortgages. What he did in the premises and his subsequent handling of the mortgages sheds light on his intentions as the same are expressed in the language in Exhibit A.

■ Mr. Westerbaum, subsequent to the date of Exhibit A, executed five wills wherein disposition was made of his property and some of the mortgages set out in the schedule attached to Exhibit A, and these mortgages were, under the terms of the will, devised to certain named devisees. The last of these wills has been admitted to probate by the Probate Court of Ramsey County, Minnesota.

The bank pass books are in the name of Mr. Westerbaum, personally. The books of account, and all the records of Mr. Westerbaum, set out and disclose collection of interest on the mortgages, and collection of the principal of some of the mortgages. These records set out the personal accounts of Mr. Westerbaum. They were not kept by him as trustee for the plaintiffs herein, and there is nothing in such books to indicate that Mr. Westerbaum at any time regarded himself as responsible to the plaintiffs in this case as the donees under any trust. The names of the plaintiffs are not mentioned in such records as having any interest in any of such collections; in fact, their names are not mentioned therein at all.

Presumably Mr. Westerbaum was an honest man, and if it was his intention to give the mortgages to the plaintiffs, or to constitute himself a trustee, he would have kept books of account as such trustee. He would have kept an account of his collections of interest and principal of said mortgages, and in some of the letters which he wrote to his nephew he would have advised and informed him of the collections, and in instances where collections were made, would have made remittances to the plaintiffs. He would have indicated by his books, records and writings that he was acting as trustee for the plaintiffs in the collection of the interest and principal of the mortgages referred to in the schedule attached to Exhibit A. He did none of these things, but on the contrary, retained possession of the mortgages, kept them in his own name, collected the interest thereon, and in some instances the principal of the mortgages, and in all respects treated and used said mortgages as his own property, exercising full and complete dominion and control over the mortgages and the collections realized thereon. Considering all of that evidence, it is inconceivable that Mr. Westerbaum, at the time of writing the letter, Exhibit A, intended to part with any title, either legal or equitable, either to the mortgages or the proceeds thereof. His conduct in treating with and handling the mortgages and collections thereon is inconsistent with that of the character of a trustee. See Ambrosius v. Ambrosius, 2 Cir., 239 F. 473.

The face value of the mortgages set out in the schedule attached to Exhibit A constitute approximately one-half of the total value of the estate left by Mr. Westerbaum. In Mr. Westerbaum's letter to his nephew, dated February 22, ——, he made reference to the fact that he was paying the cost and expense of transmitting the $5,000 which he sent to his nephew as a gift. He was a frugal type, conservative and appreciative of the value of money and the efforts necessarily required in the earning and accumulation of money. When he transmitted this $5,000 to his nephew, there was nothing in his letter indicating that it was a payment from and out of the trust account in favor of his nephew or his wife, but on the contrary, he made it clear that this $5,000 was a gift from Mr. Westerbaum to his nephew.

The dealing with and handling of said mortgages, and the collection of interest and principal indicate clearly that it was not the intention of Mr. Westerbaum to deprive himself of the ownership of said mortgages or the enjoyment of the proceeds and income derived therefrom. He retained complete control over the mortgages at all times, treated the same as his own property, used the interest and principal collected from said mortgages for his own purposes. Such conduct is certainly inconsistent with any intention at the time of the writing to create a trust. See Eschen v. Steers, supra.

Further, the conduct of the plaintiffs from January, 1933, the date of the receipt of Exhibit A, down to the death of Mr. Westerbaum, clearly indicates that they did not understand or treat the letter as a declaration of trust for their benefit. There was no reference in any of the letters from the nephew to his uncle with respect to the trust. No inquiries were made by the plaintiffs as to the progress of the collection of interest or principal of the

mortgages, and in the letter from Birger Bingen to his uncle, dated March 23, 1935, the nephew merely acknowledged receipt of the $5,000 bank draft, and made no statement with respect to applying the same as payment on the trust account, nor did he make any inquiry of his uncle as to whether such payment should be applied upon the trust account. All of these facts indicate that, as between the parties themselves, Exhibit A was not considered by them as establishing a trust.

The language of the letter relied upon by the plaintiffs as creating a trust does not comply with the rule of certainty of expression required in the establishment of a trust. The subsequent conduct of Mr. Westerbaum in dealing with the mortgages clearly proves that it was not intended as a declaration of trust, and the most which can be said for it is that it is an uncompleted attempt to make a gift.

Judgment should accordingly be entered in favor of the defendants.